## Anglea's Admx v. East Tennessee Telephone Co.
## Franklin Electric Ice Co. v. Anglea's Admx.

(Decided March 2, 1911.)

### Appeals from Simpson Circuit Court.

Telephones and Telegraph—Injury to Employe—Repairing Wire—Ab-
sence of Contributory Negligence.—M. D. Anglea, who was in
the employ of the East Tennessee Telephone Co., was killed in
falling from a telephone pole by coming in contact with a live
wire while engaged in repairing one of the company's wires, the
main defense of the company being that its wires were in such
bad condition that deceased must have known it, and as he took
the risk of coming in contact with them his administratrix could
not recover for his death. Held, there was no testimony of con-
tributory negligence on the part of deceased, and as it can not
be presumed that a person who is dead at the time of the trial
was guilty of contributory negligence, it must be proven.

LAWRENCE B. FINN for the administratrix.

SIMS & RODES for East Tennessee Telephone Co.

ROARK & FINN for Franklin Ice Co.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

On and prior to August, 1909, M. D. Anglea was
employed by the East Tennessee Telephone Company as
a lineman, or "trouble man." Sometime prior to that
date the Franklin Electric Ice Company established an
electric light plant in the city of Franklin, the place
where Anglea was engaged, and by some arrangement,
which is not shown, the electric light company attached
its wires to the poles of the telephone company. For
some time the electric light plant was operated only at
night, but about three months before Anglea was killed,
the company started and continued the operation during
the day time. Anglea was killed about three o'clock one
afternoon while on the pole of the telephone company in
the performance of his duty as lineman for that company,
by coming in contact with an electric light wire, and his
administratrix brought suit against both companies, al-
leging that Anglea lost his life by reason of the joint and

concurrent negligence of the two companies. She alleged that the electric light company failed to have and keep its wires properly insulated and to properly and safely string them at the point where Anglea was compelled to labor, and that the telephone company failed to furnish Anglea a reasonably safe place in which to perform his labor.

On the trial of the case, after the administratrix introduced her testimony, the lower court gave the jury a peremptory instruction to find in behalf of the telephone company, to which she objected and from which ruling she appeals. The court overruled the motion made by the electric light company for a peremptory instruction, completed the testimony as to it, instructed the jury and it found in behalf of the administratrix, the sum of $5,-000, from which the electric light company appeals.

These two companies owed Anglea very different duties. The telephone company, his employer, was required by law to use reasonable care to furnish him a reasonably safe place and appliances in and with which to labor. Anglea had been a lineman for that company at that place for about seven years. It was his business to erect the poles, string the wires and keep them in condition for use by the telephone company's subscribers. He knew the condition of the wires of the company and the bad condition of the wires of the electric light company as well as or better than any one connected with his employer, and he had no special or positive directions by any superior employe of the telephone company to do work on the pole where he was killed, and it was on account of these facts, we infer, that the lower court gave the jury a peremptory instruction to find for the telephone company. This is a close question, but, giving some weight to the judgment of the lower court, we are inclined to let the judgment in favor of the telephone company stand.

The situation of the electric light company is different from that of the telephone company. Anglea was a member of the public in so far as it was concerned, and it knew that he would be frequently compelled to go up this pole while in the discharge of his duties to the telephone company; therefore, it was necessary for it to properly and safely insulate and string its wires. The testimony as to Anglea's injury and death was, in substance, that this pole was about forty-five feet high;

that near the top there was a box belonging to the telephone company; that just below the box was a messenger wire supporting a telephone cable from which a spur ran into the box and connected with the wires going into the residences in that neighborhood; that there were small iron steps about three feet apart on the east and west side of this pole to be used by the employes of the telephone company in ascending and descending the pole. It further appears from the testimony that there was a small, copper wire attached to the pole, running from the ground to the box mentioned, which was for the purpose of conducting the lightning from the telephone wires to the ground, and that the pole also had attached to it a guy wire about ten and a half feet above the ground and about five feet below the telephone cable; that the electric light wires at this point ran east and west and one was fastened to the north side of the pole with a bracket which held it about two or two and a half inches therefrom, and the other was attached to the south side of the pole but was held about twelve inches therefrom. The testimony shows that one of the telephones in the vicinity was out of working order and that Anglea went up the pole, as it was his duty to do, for the purpose of ascertaining the cause of the trouble and remedying it if he could. He ascended the pole, using the iron steps, with his back to the north until he reached the telephone cable, where he stopped for a little while with one foot on an iron step and the other resting on the messenger wire, with one arm around the pole, his head south thereof, and was, apparently, looking up towards the box through some limbs to see whether or not the limbs were interfering with the wires and causing the trouble, and it was from this point that he fell suddenly which rendered him speechless and caused his death a few hours afterwards. The electric light wire burnt him rather to the back of the shoulder and near the base of the neck, about one and a half inches in depth. There was also a burn about two inches back of his left ear and about an inch long extending from the lower edge of his hair. There was also a small burnt place on the bottom of his foot that was resting on the messenger wire which, as the witnesses stated, showed that the current of electricity passed through his body to the wire. All the evidence shows that the electric light wire at the place where Anglea was killed had lost nearly all of its insula-

tion; that the pole was chestnut wood and full of crev-
ices; that it was very easily saturated with water, at
least, that it would absorb water more readily than most
poles; that there had been a very heavy rain the night be-
fore Anglea was killed and that the pole was damp. The
evidence also shows that the copper wire before men-
tioned, showed signs of having been burnt with electricity
at the point where it crossed the guy wire. The expert
witnesses who testified stated that the electric light wire
was so badly insulated at that point that electricity es-
caped from it and passed into the pole and copper wire
in sufficient quantities to give a person a shock when they
come in contact with either of them while standing upon
or holding to a conductor of electricity connected with
the ground. Anglea was a little over six feet high and
the electric light wire was only five feet above him, so he
must have stooped a little to get his head out south of
the pole to look up through the limbs, and the reasonable
inference from the testimony is that when he was so sit-
uated he received a shock from the pole or copper wire
which caused him to inadvertently throw himself up
and thus come in contact with the uninsulated electric
light wire which killed him. The wire was carrying a
current of about twenty-two hundred volts. A bunch of
Anglea's hair was found hanging to one of the electric
light wires after he fell.

The electric light company did not defend upon the
idea that it had used due care in stringing and insulat-
ing its wires, but, on the contrary, its main defense was
that its wires were in such a bad condition that Anglea
must have known it, and as he took the risk of coming in
contact with them, his administratrix should not be al-
lowed to recover. The testimony shows that he knew
that it was dangerous to touch one of the electric wires
while standing upon a conductor of electricity connected
with the ground, and the electric light company claims
for that reason his administratrix should not be per-
mitted to recover.

In the case of Overall v. Louisville Electric Light
Co., 20 Ky. Law Rep., 759, a case very similar to the one
at bar, this court said:

"Appellant at the time he was struck was in a place
where his business required him to be, and where he had
a right to be, and it was the duty of the electric light
company to know that linemen of the telephone company

would have to come in close proximity to its wires in attending to their duties, and it was its duty to use every protection which was accessible to insulate its wires at that point and at all points where people have a right to go for business or pleasure, and to use the utmost care to keep them so; and for personal injuries resulting from its failure in that regard it is liable in damages.''

If the electric light company's contention were sustained, it would have the effect to remove all employes of the telephone company from the discharge of their duties. It is true, the evidence shows that Anglea knew that to come in contact with the wire when standing upon a conductor of electricity which was grounded would produce injury or death, but there is no evidence that he intentionally came in contact with the wire. As stated, the inference from the testimony is that he was looking up through the limbs trying to see if they were causing the trouble with the 'phone which had been reported out of repair, and that while thus situated he received a shock in the manner before stated which caused him to unconsciously straighten up and come in contact with the electric light wire. There was no testimony of contributory negligence on his part, and as it cannot be presumed that a person who is dead at the time of the trial was guilty of contributory negligence, it must be proved. (Lexington & Carter County Mining Co. v. Stephens' Admr, 104 Ky., 502, and C., N. O. & T. P. Ry. Co., v. Yocum, 137 Ky., 117.)

The testimony of all the witnesses shows that the electric light wires were improperly hung and insulated, and there is no pretense on the part of the company that it made any effort to insulate them, therefore, the instructions criticised by it which required the company to exercise a high degree of care in that regard were not hurtful to it and it is unnecessary to consider the instructions any further.

As before stated, the main defense is that the place and appliances were so unsafe that Anglea must have known it and it was his duty to cease his labor for the telephone company, and as he did not he can not recover. We can not agree with appellant, Franklin Electric Ice Company, in this.

The judgment is, therefore, affirmed in both cases.