## Cline, et al. v. Hatcher.

(Decided October 10, 1911.)

### Appeal from Floyd Circuit Court.

Action Upon Note—Error of Commissioner In Applying Payment—Pleading—Prayer for General Relief.—In an action upon a note,

while judgment was not asked for balance due, under the prayer for general relief, the court had the right to render judgment therefor, and appellants, upon their own motion, had the case referred to the commissioner with directions to ascertain and report the state of accounts, but where the commissioner applied a sum as credit which should not have been applied, it was error to render judgment in accordance with his settlement.

JAMES and W. C. GOBLE and W. H. LAYNE for appellants.

W. S. HARKINS and F. A. HOPKINS for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellee, James Hatcher, brought this suit against P. L. and Asa P. Cline, R. S. Booten, James Arnett and Henry Blankenship. The suit was instituted upon a note signed by P. L. Cline only, dated December 27th, 1897, for the sum of $543. To secure the note, P. L. Cline executed a mortgage upon five yoke of oxen, and appellee charged that Asa P. Cline was aiding his co-defendant, P. L. Cline, to hide the cattle; that they had sold some of them to Booten, Arnett and Blankenship, and asked for an attachment against the cattle. The prayer of the petition was for a judgment against P. L. Cline for the sum of $543 with 6 per cent. interest, and that the lien against the property described be enforced and the property sold to pay his debt, and for a specific attachment against the property and a judgment for his cost and all general and special relief. The Clines named in the petition together with E. L. Cline filed an answer and counterclaim admitting that P. L. Cline executed the note and mortgage, but denied that the note was just and unpaid and denied the grounds for the attachment. They alledged that in the spring of 1897, appellee and Asa P. Cline entered into a logging contract; that Asa P. Cline commenced getting out logs under the contract; that afterwards, July 27, 1897, the contract was reduced to writing and is as follows:

"This contract made and entered into this the 23rd day of July, 1897, by and between James Hatcher and A. P. Cline: The said Cline agrees and binds himself to take from the stump a certain lot of poplar, cucumber ash and oak trees now on the 3rd Fork of Big Creek, Pike County, Kentucky, and deliver same on suitable pits to load on cars, at or near mouth of said 3rd Fork, and the said Cline is to build pits, cut, saw, knot, and

trim all logs in first-class, workman-like order. For which the said Hatcher is to pay five cents (5) per cubic foot; said trees to be laid off after they are cut and felled by said Hatcher, or some one designated by him before they are sawed into logs, and after said logs are delivered on pits they are to be measured according to the rule and custom of measuring at Catlettsburg, Kentucky, that is, to cut all defects to make logs good; logs under 24 ft. in length to be measured at the small end and all logs 24 ft long, one-third of the distance from the small end; and all logs 36 ft. in length and over to be measured in the middle; all logs to be measured both ways with calipers and divide the difference, throwing off all fractions of inches, all logs to be measured even feet.

"Said Hatcher is to furnish said Cline corn delivered at his tram road on said Big Creek at mouth of 3rd Fork, at 75 cents per bu. and corn chop at 80c, said Cline is to pay for the sacks that contain said corn and chop. Said Cline is to pay off all his expenses in hauling said timber in the store of James Hatcher. Said Cline is to work 10 or 12 yokes of good cattle in hauling said timber and if said Cline fails to complete said job by December 25, '97, then said Hatcher has the right to put other teams to work at said hauling at the expense of said Cline. Said Cline is to begin work at once and continue same with said teams, and at any time said Cline fails to do satisfactory work, or it becomes evident that Cline can not complete said job by December 25, '97, then said Hatcher has the right to put other teams to work at said job, after giving said Cline three (3) days notice in writing. Said Cline is to haul the timber from the head of the creek first, that is to say, beginning at the head of the creek and work the timber as it comes down the creek until the job is completed.

"If any said logs when measured on pits has odd feet caused by sawing, then said Cline is to pay said Hatcher (10) ten cents per cubic foot for all odd feet or loss caused by said negligence or bad sawing.

"When said job is completed then said Hatcher is to pay said Cline balance due him at price above stated. If said Cline should fail to complete said job by December 25, '97, it is not to interfere with price agreed upon."

The parties continued to execute this contract up to the date of the note sued on, when it was transferred to

Asa Cline's sons, P. L. and E. L. Cline, for that reason P. L. Cline executed the note and mortgage referred to. This transfer was made to prevent the creditors of Asa P. Cline from reaching his property and crippling him in the furtherance of his contract, but Asa P. Cline, the father, was in fact the owner of the contract and the property. They stated that the amount due them for logs hauled under the contract at five cents per cubic foot was about $2,400, and they claimed three or four hundred dollars in damages because Hatcher failed to furnish provisions and feed for the cattle, as he had agreed to do in the contract, whereby he was compelled to take the cattle to his home and feed them for more than a month; that Hatcher again in April refused to furnish provisions and feed by reason of which he was compelled to abandon the contract and leave one hundred and fifty logs cut and that many more uncut which he had made roads to for the purpose of hauling them out, by reason of which he was damaged in the sum of about $600. They further alleged that during the performance of the contract, the parties saw that it was necessary to build a tram road from Big Creek up the third fork for a disdance of about one mile, to enable the parties to get the logs out by December 25th; that appellee agreed to build this road for $300, and complete it within three weeks from that time, which would have been sometime in the latter part of July, but he failed to complete it until about November first, which delayed them very much in getting the logs out, as the days had become very short and the weather cold and frosty which made the tram road slippery, thus increasing their expenses in removing the logs to their damage in the sum of $300; that by reason of appellee's failure to furnish the feed for the cattle, as he had agreed to do, five of them died of starvation; that they were reasonably worth $160; that those which survived were damaged to the extent of $50. They alleged that under their contract they were compelled to buy their provisions, feed and supplies from Hatcher; that he was to charge reasonable prices therefor, but that he in fact charged them from one-third to one-half more than a reasonable price to their damage in the sum of $600; that when they were compelled to leave the job, the tram road for which appellee charged them $300 and the cars and trucks used on it for which he charged them $60 were left there to be used and were used by ap-

pellee or with his directions, to haul the remainder of the logs, and that appellee refused to give them credit for any of these things. They alleged that these matters and others not necessary to mention amounted to about $3,200, and then proceeded to give appellee the items of credits to which he was entitled, amounting to something over $1,900, and then prayed a judgment against appellee for the difference, that his action be dismissed and for their cost. Appellee filed a reply to this answer and counterclaim in which he denied the correctness of almost every item charged against him and the correctness of the credits allowed him, and then proceeded to state the accounts between the parties as he understood them, which he alleged showed that appellants were indebted to him more than $900, and then closed with the following prayer:

"Wherefore plaintiff having replied prays as in his petition and all proper relief."

Appellants filed a rejoinder controverting the affirmative matter of the reply, and set forth additional matter, which is not necessary to mention, and prayed as in their original answer and counterclaim. Appellee then filed a sur-rejoinder in which he controverted the affirmative matter in the rejoinder, and closed with this prayer:

"Wherefore, having fully sur-rejoined, plaintiff prays as in his original petition, and for all general and special relief and will ever pray."

Soon after the commencement of the action, the case was referred to the master commissioner upon appellant's motion, to take proof and report the existing state of accounts between the parties. There was a mass of testimony introduced. The commissioner made his report and brought appellants out in debt to appellee in the sum of $670. In arriving at this sum the commissioner did not give appellants credit for any part of the $300 charged against them for the building of the tram way nor for the trucks and cars used on the tram way which were left in appellee's possession when appellants were compelled to abandon the job, nor did he give them credit with any part of the over charges for supplies in the account of appellee which amounted to $3,200, nor did he give them credit for any part of their claim for damages for being delayed in their contract for over a month when they had to keep their cattle at

their home and feed them, nor for any part of the damages which they alleged by reason of five of their cattle starving to death and others becoming damaged by lack of food. There was considerable difference between the parties as to the number of cubic feet of logs hauled, which amounted to several hundred dollars, and appellants claimed that appellee failed to credit them with the true amount. Testimony was introduced showing several mistakes were made in measuring the logs; that some of them were unintentional on the part of the person employed by appellee and in appellee's favor, and that some of the logs were delivered to appellee without being measured, but the commissioner failed to give appellants any credit on account of any of these matters. Appellants also alleged in their pleadings, and much proof was taken upon the point, that it was understood in the verbal contract with appellee, that Asa P. Cline was to receive five cents per cubic foot for hauling the logs; that they were to be measured according to the Catlettsburg rule, which required all logs twenty-four feet and under to be measured at the small end and all over that length in the middle, but that when they executed the writing copied above appellee fraudulently claimed that the Catlettsburg rule had been changed by statute and pretended to read the statute, which was to the effect that all logs over twenty-four feet long and up to thirty-six feet were to be measured one-third of the way from the small end, and hence it was so stated in the writing. Appellee denied that he read or pretended to read the statute, but stated that he did read to him a copy of a contract made between the Yellow Poplar Lumber Co. and some person stating that the rule above mentioned should thereafter prevail, and denied that appellants were defrauded out of several hundred dollars by reason of the measurement.

Upon a trial of the case, the lower court gave appellee a judgment for his note of $543 and interest, and for the $670 found by the commissioner, sustained the attachment and directed the proceeds of the attached property to be applied to the payment of the judgment for $543 note, but it seems that the commissioner paid it to appellee and took his receipt as if it were to be applied to the payment of the $670. This was an error of the commissioner, rather than in the judgment of the court. Appellant's counsel claim they are entitled to a re-

versal because the lower court erred in giving judgment for $670, as appellee failed to ask for that amount or any other sum in his pleadings; that all appellee sued or prayed for in his pleadings was the amount of the note and the enforcement of the mortgage. The general rule is as contended for by appellant's counsel, to-wit: That the relief afforded by the judgment must conform to the case made out by the pleadings. (Crow v. Owensboro & N. R. R. Co., 82 Ky., 134.) Appellee's reply controverted appellants' counterclaim and presented a claim in favor of appellee which showed a balance due him on the logging contract. Appellants, upon their own motion, had the case referred to the commissioner with instructions to ascertain the state of accounts between the parties, and both parties took testimony without objections to sustain their claims. While appellee did not ask for a judgment for the balance due him over against appellants, he did ask for all general relief. If the amount due appellee on the logging contract was greater than that due appellants, we are of the opinion that the court had a right, under the reference to the commissioner, the proof taken and the prayer for general relief, to render a judgment therefor. We are of the opinion from the state of the pleadings and proof that it was not a mere oversight in appellee in failing to ask for the amount due him, and that he only used the matters set forth in his pleadings to off set appellants' claim, believing at the time that their accounts were even or so nearly so that he only wished to recover the amount of the note sued on. The proof shows that appellee charged appellants exorbitant prices for the things furnished them out of the store to carry on the logging contract; that appellee failed to furnish feed for the cattle as he had agreed to do by reason of which appellants were forced to carry the cattle home and feed them there during the month of January, and that appellants finally had to abandon the contract in April as they had no feed for their cattle. Appellants were entitled to be credited with something for the tram way, or for at least the use of it to finish the hauling of the logs, and also something for the use of the trucks and car, and we are confident that appellants were entitled to credit for hauling a greater number of cubic feet than the commissioner gave them, and for several other small sums not necessary to mention, altogether amounting to as much as the $670 judg-

ment.   It is evident to our minds that appellee brought and prepared his action believing that he was only entitled to a judgment for the amount of the notes, $543.

For the error in rendering judgment in behalf of appellee for the $670, the judgment is reversed and remanded, with directions to the lower court to set that much of the judgment aside.