## Louisville Gas & Electric Company v. Beaucond.

(Decided June 8, 1920.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, No. 3).

1. Negligence—Transmitting Electricity Over Wires—Inspection.— The duty of one engaged in transmitting electricity over wires is to exert the highest degree of care and skill known, which may be exercised under the same or similar circumstances, to inspect, arrange and protect the wires so as to make them harmless to persons who may come in proximity to them, at places, where such persons have a right to go and to be.

2. Negligence—Distributing Electricity.—Where one is engaged in distributing electricity and knows or by the exercise of the commensurate care would know, that the wires over which he is distributing dangerous currents of electricity are not properly arranged or protected at places where he knows that persons have a right to go and be, so as to cause the places to be hazardous to persons who may come in proximity to the wires at such places, will be guilty of negligence in permitting currents of electricity to pass over the wires at such places, although the

unsafe arrangement of the wires may in the first place have been caused by the negligence of some other person.

3. Negligence—Question for Jury.—It cannot be held as a matter of law that a feat requiring physical strength and action is a physical impossibility, when the performance of the feat is within a reasonable radius of human action, and where certain men depose that they have performed the feat, but others depose that it is a physical impossibility for them to do so, its possibility to any particular individual is a question for the jury.

4. Negligence—Contributory Negligence.—One is not contributorily negligent so as to defeat a recovery of damages because he exposes himself to a known danger at a place where it is his duty to go and where he has a right to rely upon the inspection and care of another, unless the danger is so obvious and imminent that no ordinarily prudent man would subject himself to it. Under such circumstances it is his duty to exercise such care for his own safety as an ordinarily prudent man would, under the same or similar circumstances.

5. Negligence—Contributory Negligence—Instructions.—The failure to give instructions upon the subject of contributory negligence, specifically setting out the facts relied upon for the defense, is not a reversible error, if an instruction is given upon the subject in general terms, in the usual way, and the instruction, together with the others, given, adequately presents the theory of the defense of the defendant.

6. Negligence—Concurring Negligence—Damages.—If the negligence of two parties concur and cause an injury, the victim may proceed against them jointly, or he may proceed against one and recover his entire damages from him, if the negligence of the one sued is an efficient cause of the injury so as to make him liable at all.

7. Negligence—Concurring Negligence—Damages.—If one of two parties whose acts of negligence concurring cause an injury is made to satisfy the entire damages for the injury; if the right of contribution exists between him and the other tort feasor, he may, after having satisfied the judgment, proceed against him for indemnity, but he cannot do so before.

8. Negligence—Concurring Negligence.—Where the negligence of two or more concur and cause an injury, the injured party may release one or more of them from liability upon the payment to him of a sum in compensation, and the others will not be released thereby, unless the sum paid is received in satisfaction of the entire damages for the injury, but the others are entitled to have the benefit of the sum paid in pro tanto satisfaction when they are made liable for the entire damages for the injury.

MATT O'DOHERTY for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This action was brought by the appellee, Maurice Beaucond, whom we will hereafter call the plaintiff, against the appellant, Louisville Gas & Electric Company, which will hereafter be called the defendant, to recover damages for injuries which he alleges, that he sustained from the negligence of the defendant. Two trials have been had during the pendency of the action, the first of which, as well as the second, resulted in a verdict of the jury awarding to the plaintiff damages in a substantial sum. The first verdict and judgment thereon were set aside by the circuit court upon the motion of defendant, and a new trial granted, but upon the second verdict the court rendered judgment for the plaintiff, and the defendant's motion for a new trial having been overruled, it has appealed. The defendant is engaged in the manufacture and sale of electricity in the city of Louisville, for heating, lighting and power purposes; and in the conduct of its business, and in the transmission of electricity to its customers, it owns and uses poles and wires which are erected upon and stretched along the streets. One of the streets thus occupied by it is Baxter avenue and upon this same street, the Home Telephone Company, also, has poles erected and its wires strung thereon. The poles of the two companies occupy the same side of the street and are set very near to the curbing, and nearly in line with each other, which places a pole of the telephone company with a pole of the defendant, upon each side of it. The poles of the telephone company exceed those of the defendant in height, and hence the wires of the former are above those of the latter. At the point where plaintiff received the injuries, the pole of the telephone company stands slightly nearer to the curbing than the poles of the defendant upon either side of it, and also, has an inclination of five or six inches away from the street. The defendant has seventeen wires suspended upon arms upon each of its poles upon either side of the telephone company's pole, and they pass by the latter pole at a distance of seven or eight feet from its top. Two of the defendant's wires are upon the side of the telephone pole next to the curbing or property line, and upon that side of the telephone pole a bracket has been attached, and to which the defendant company's wires were attached at the time of the plaintiff's injuries; and there was evidence to the effect that previous to the time of the plaintiff's

injuries the wire mentioned had been lying between the bracket and the pole, causing a blackened mark upon the pole, as the result of the escape of the electrical current from the wire. If upon the bracket, it was three or four inches from the pole. One of the steps or iron stirrups, by which the telephone pole is ascended, is fastened to the pole at a distance of three to six inches below the last mentioned wire of the defendant, and this wire carried an electric current with a voltage of 2,200. The telephone pole was what is denominated a "terminal" and attached to the cable proceeding from the terminal, at the top of the pole, was a grounded wire which is denominated a "messenger." The plaintiff was a servant of the telephone company in the capacity of a line or "trouble" man, and had been for several months theretofore, and had been in charge of the district of the city in which is situated Baxter avenue, though he had never ascended the described pole and had never had occasion to give it any particular attention. Upon the occasion of his injuries, he was required in the course of his duties to ascend the pole, to near the top, in order to investigate and find the cause of a trouble with the line which connected with a customer of the telephone company. According to the version of the plaintiff, he ascended the pole upon the side nearest to the property line, and when he reached the wires of the defendant company upon that side on account of their proximity to the pole, he reached over to the stirrup above and with his left foot resting upon the stirrup immediately underneath the wire, he placed his right foot upon the stirrup upon the other side of the pole, which is eighteen inches above the one upon which his left foot was resting, and at the same time he was holding on with his left hand to the stirrup which was thirty-six inches above the stirrup where he had placed his left foot, and drawing up his body with his left hand and right foot, he reached out with his right hand for the purpose of taking hold of the "messenger" wire, when unwittingly and unintentionally upon his part, his left foot came in contact with the defendant company's wire just above it, and when the points of his fingers came in contact with the "messenger," he experienced an electrical shock which caused him to loose his hold with his left hand from the stirrup to which he was holding, and to fall to the concrete sidewalk underneath, a distance in

excess of thirty feet. The fall severely and permanently injured his feet and he, also, otherwise received injuries.

The negligence with which plaintiff charged the defendant company, and which he relied upon as the proximate cause of his injury, rests upon the averment that he was in a place at the time of his injuries where he had a right and which it was his duty to be, and where the defendant was required to anticipate his presence, and that it had negligently strung and maintained its wires, which were charged with an electric current calculated to produce death by coming in contact with them, in dangerous proximity to the pole of the telephone company, where defendant knew it was his duty to be and to go, and that it negligently transmitted a large electrical current over the wires which were insufficiently insulated at such a place, and on account of the proximity of the wires to the pole of the telephone company and their insufficiently insulated condition, it rendered the place hazardous and dangerous, and resulted in his injuries, when he was exercising ordinary care for his safety and while the defendant company knew or would have known, by exercising the commensurate degree of care required, of the dangerous manner in which the wires were maintained and the insufficiency of their insulation. He did not know that the wires were charged with a high or dangerous current of electricity, or were insufficiently insulated.

The defendant company denied all the averments of plaintiff's petition, and in addition thereto pleaded that his injuries were caused by his contributory negligence. It, also, pleaded that after the injuries were sustained by plaintiff, he made a claim against the Home Telephone Company to the effect, that his injuries were caused by the negligent failure of the telephone company to provide him a reasonably safe place in which to work and in compromise and satisfaction of the claim, the telephone company had paid the plaintiff a sum of money, and that he executed a writing to the telephone company acknowledging the receipt of the money in satisfaction of his claim, and releasing it from further liability.

By reply the plaintiff traversed the allegations of the answer and pleaded, that, it was true, he had made a settlement with the Home Telephone Company and received from it $750.00 in part satisfaction, only, of his cause of action and the damages suffered by him, but in

full satisfaction of his claim for damages against the telephone company, expressly reserving the right to prosecute an action against the defendant. The written agreement entered into between the plaintiff and the telephone company was filed as a part of the reply.

(a)   The plaintiff was permitted, over the objection of the defendant, to prove by various witnesses, who are experts in construction of the necessary facilities of electrical companies, that it was practical for the defendant to have placed a cross-arm upon the telephone pole, and attached its wires thereto, and thus have removed the wires to such a distance from the pole as to reduce the danger of one coming in contact with them, in ascending or descending the pole, to a minimum. The defendant now insists that the admission of the testimony was erroneous and prejudicial to its rights for two reasons. First, the poles of defendant were placed in their positions upon the street and the wires strung upon them several years before the poles of the telephone company were erected and the telephone company was thus necessarily the cause of the proximity of the wires of the defendant to the pole. Second, that the failure to fix a cross-arm and suspend the wires to it was not an act of negligence, which was complained of in the petition Touching the first ground of objection to the competency of the testimony, it should be observed that a contract between the defendant and the telephone company was introduced in evidence, the obligations of which were not denied by the defendant, and by which the two companies had agreed that the defendant could place upon the telephone company's poles such attachments as it might desire to use in connection with properly constructed metallic circuits for the distribution and transmission of electricity, and the telephone company could place upon the poles of defendant such attachments as it might desire for furnishing telegraphic or telephonic communications. The evidence does show that the poles of the defendant were occupying the street before those of the telephone company were erected, but it does not show, that the wires of the defendant, which were upon the property side of the telephone pole, were strung before or after the erection of the telephone pole. From the facts proven, it may, also, be inferred, that the defendant placed the bracket upon the telephone pole and attached thereto the wires which are complained of.

The defendant, although the first occupant of the street, did not have an exclusive right to it. It must be assumed that the telephone company has a valid franchise, and under such, acquired the right to the occupation of the street, which it has, and the right to make such use of its location in carrying on its operations as would not amount to an unnecessary and unreasonable invasion and disturbance of the operations of defendant. It must, also, be assumed that the defendant accepted its franchise, in the first place, and occupied the street subject to the use, which, thereafter, other electrical companies might be authorized to make use of the streets, preserving to the defendant such rights as would follow its prior occupancy, in a way, not to unreasonably interfere with its operations and use of the street. The franchise of neither company is before us, nor does the evidence disclose how many years the poles of the companies have occupied the relative positions to each other now occupied by them, nor the date of the contract referred to between them, but the defendant has for a number of years, at least, without any objection thereto, acquiesced in the poles being situated as they now are. The terms of the contract do not authorize either company to fix attachments to their own poles for the use of the other, or to attach the wires of the other to such attachments, and it cannot be assumed that either company would accede to the other the right of adjusting their apparatus. The contract was manifestly made to enable each company to so adjust its wires as would be not only to its best interest in trade, but to enable it to make such other arrangements as would be for its interests and among which would be the duty to protect the public, including the servants of the other, against the dangers arising from its operations. Hence, when the evidence would seem to conduce to prove that defendant had placed a bracket upon the telephone pole and suspended its wire a few inches from the pole upon the bracket, it must be assumed in the absence of anything to the contrary that it acceded to the telephone company the right to place its pole as it did, and took upon itself the obligation of so arranging its wires at that point as not to endanger the servants of the telephone company. The contract, it entered into with the knowledge that the servants of the telephone company must necessarily ascend the poles, when occasion required, and if there was

no contractual relations between the two companies, it will not be assumed that the telephone company negligently so erected its pole, that it would be within a dangerous proximity to the wires of the defendant, and the defendant having knowledge of the proximity of its wires to the pole, and having acquiesced therein for a long time, and having knowledge of the dangerous current of electricity, which it transmitted over such a wire, it became its duty to exercise the highest degree of care and skill known and which should be exercised under similar circumstances to save the servants of the telephone company harmless by properly arranging and insulating its wires, or resorting to other devices necessary to make the place safe, so far as its wires and appliances were concerned. A servant of the telephone company, at such a place, was one of the public so far as the rights and duties of the defendant are concerned with reference to him. The care required of one who is engaged in distributing electricity, as an electric light company, has, oftentimes, and without variation, in this jurisdiction, been declared to be, that he must exercise the highest degree of care and skill known, which may be exercised under the same or similar circumstances, to prevent injury to persons, who may be at places, where they have a right to be for either business or pleasure, or who may be engaged in doing things, which they have a right to do. Many authorities have broadly held that it is the duty of one who transmits over wires, an agency so deadly as electricity, the presence of which cannot be known or observed by any of the senses, except that of touch, and the presence of which is not known, in that way, until it is too late for the victim to escape, to use the highest degree of care known, which can be exercised under similar circumstances, to so adjust and protect the wires as to render them harmless to persons whose duty it is to come in proximity to them, regardless of any relations with other parties, and a failure to do so, when he knows, or when it is his duty to know, the dangerous condition of the wires at a place, is negligence, and the effects of which cannot be avoided on account of the negligence of a party other than the one injured. McLaughlin v. Louisville Electric Light Co., 100 Ky. 173; Paducah Ry. & Light Co. v. Bell's Admr., 27 K. L. R. 28; Overall v. Louisville Electric Light Co., 20 K. L. R. 759; Lexington Ry. Co. v. Fain's Admr., 24 K. L. R.

1443; Scheitzmer's Admr. v. Citizens' Gen. Electric Co., 21 K. L. R. 608; Macon v. Paducah Ry. & Light Co., 23 K. L. R. 50; City of Owensboro v. Knox's Admr., 25 K. L. R. 50; Thomas's Admr. v. Maysville Gas Co., 23 K. L. R. 1879; Smith's Admr. v. Middlesboro Electric Co., 164 Ky. 46; Citizens Telephone Co. v. Wakefield, 126 S. W. 127; Thomas v. Somerset, 97 S. W. 420; Paducah Light Co. v. Parkman, 156 Ky. 197; Lancaster v. Central City Light & Power Co., 137 Ky. 355; Union Light, Heat & Power Co. v. Young, 141 Ky. 805; O'Donnell v. Louisville Electric Light Co., 21 K. L. R. 1362; Mangan v. Louisville Electric Light Co., 122 Ky. 476; City of Owensboro v. York, 117 Ky. 294; Rogers v. Union Light Co., 123 S. W. 293. Hence, if certain testimony, in this case, is true, which tends to prove that a wire carrying a current of 2,200 volts of electricity, cannot be so insulated as to remove the danger of the transmission to a human body of the electrical current, when some portion of the body comes in contact with it and with a "grounded" wire at the same time it would seem that at such a place as persons may lawfully be and go, as upon this pole, it would be the duty of the defendant to so adjust its wires, with a device if there be one in common use and known so as to reduce the danger of contact with the wire, to the smallest degree practicable and, further, if the highest degree of care and skill known, under similar circumstances, required the use by defendant of a cross-arm upon the pole—a device in common use—and which could be practically attached thereto, to protect one whose duties required him to ascend and work upon the pole, the failure of applying such a device would be evidence of negligence in maintaining the wires.

The introduction of testimony conducing to show the dangerous proximity of the wire to the poles, and on that account calculated to injure one ascending the pole, and that it was practical to remove the wire from dangerous proximity to the pole, by attaching it to an arm in the usual way that arms are placed upon the poles, and the wires of the company attached thereto, was not incompetent evidence under the averments in the petition, nor violative of the rule which holds that when special acts of negligence are averred that the evidence must be confined to such acts of negligence as are declared. The allegations of the petition, in the

present instance, is sufficient to include such act of negligence by the defendant, if it be such.

(b)   A motion by the defendant for a directed verdict in its favor was properly overruled. The grounds upon which it insisted that it should have been given are:

(1)   The evidence did not tend to prove that plaintiff received an electric shock at all, but that he fell from the pole by mere accident.

(2)   The manner in which plaintiff claimed that he received his injuries was a physical impossibility and contrary to natural laws of which the court should take judicial notice.

(3)   The undisputed evidence proves that the negligence of plaintiff so far contributed to the cause of his injuries, but for it the injuries would not have been received.

(a-1)   In corroboration of the testimony given by the plaintiff, that he received an electrical shock, which caused the burn upon the top of his left foot, and upon the ends of the fingers of his right hand, and that such shock caused him to fall, others deposed to the fact of the apparent burn upon his foot and fingers shortly after it was said to have occurred, and another deposed to his fall from the pole to the sidewalk. The fact that his shoe nor sock, nor the glove upon his hand, if he had one, were not produced, while it tended to, did not prove that the burns were not upon his person as he claimed and the truth of the matter was one for the jury.

(b-2)   The defendant insists that the manner in which plaintiff deposed that his injuries occurred was a physical impossibility, in this, that standing with his left foot upon the stirrup about six inches beneath the defendant's wire, and with his right foot upon the stirrup upon the other side of the pole, eighteen inches higher up on the pole, and his left hand resting upon the stirrup upon the same side of the pole, but thirty-six inches above the stirrup upon which his left foot rested, that it was a physical impossibility and contrary to the physical laws of nature for him to have elevated his left foot from the stirrup so as to come in contact with defendant's wire, until he could have seized something in his right hand with which to assist in elevating his body. The plaintiff's testimony, however, was that he did so perform, and that he did the very thing which the appellant insists that the court should judicially know was an im-

possibility, and in support of this contention cites the cases of L. & N. R. R. Co. v. Chambers, 165 Ky. 703; Louisville Water Co. v. Lally, 168 Ky. 348. These cases, with facts entirely different from the facts in the instant case, support the doctrine that when the only evidence upon which a party rests his right to succeed is a statement of alleged facts, which are inherently impossible and at variance with recognized physical laws, the evidence has no probative value. The alleged actions of plaintiff which resulted in his injuries are not violative of any recognized physical law with which we are acquainted. There is no rule by which to determine the physical possibilities of a human being within a reasonable radius of action. The physical feat which the first half dozen men, who try it, cannot perform, may be performed by the next half dozen, and by some of them with ease. Upon the evidence the question was one for the jury.

(c-3)  While, if the facts upon which a charge of contributory negligence is based are conceded or proven by undisputed testimony and the inferences which can be drawn from undisputed facts, are such as about which ordinarily intelligent men do not differ, the question of contributory negligence becomes one of law for the court, but such a question is nearly always one for the jury. Conway v. L. & N. R. R. Co., 135 Ky. 229; Lewis v. Bowling Green Gas Light Co., 135 Ky. 611. Although the facts are undisputed if the conclusions which can be drawn from them are such that ordinarily reasonable men will differ as to whether the conduct of one was that of an ordinarily prudent man, the question remains one for the decision of the jury. Long v. L. & N. R. R. Co., 128 Ky. 26; L. & N. R. R. Co. v. Keifer, 132 Ky. 419; C. N. O. & T. P. Ry. Co. v. Harrod, 132 Ky. 445; Ky. Distilleries Co. v. Schrieber, 24 R. 2236; Passamaneck's Admr. v. Louisville Ry. Co., 98 Ky. 195. It is conceded that plaintiff was an experienced telephone lineman and that he knew, that, if he permitted a portion of his body to come in contact with a "grounded wire," and at the same time allow another portion of his body to come in contact with a wire charged with a high current of electricity, that there was danger of an electric current setting up through his body, and defendant insists for such reason it was entitled to have a verdict directed for it upon the ground that plaintiff negligently permitted

his foot to come in contact with the defendant's wire, which he had reason to suppose was charged with a current of electricity, and at the same time to place his hand in contact with the "messenger" wire of the telephone company which he knew was "grounded," and that, but, for such negligence he would never have suffered any injury. If the evidence proved that plaintiff purposely did such a thing, the defendant's position would be unassailable, or if his conduct, in permitting his foot to come in contact with it was the outgrowth of such negligence, that no ordinarily prudent man under similar circumstances, would be guilty of, the situation would be the same. There was evidence to the effect that the insulation upon the defendant's wire, at that point, had been burned off, while there is much evidence in contradiction of that alleged fact, and to the effect that the insulation upon the wire was intact, and was such insulation as was in general use by electrical companies upon wires, transmitting electricity, which were exposed to the weather; and a great deal of evidence to the effect that no character of insulation would make a wire, which carried a voltage such as the one complained of, to be safe, when a person would come in contact with it, and at the same time in contact with a "grounded" wire, as the "messenger" wire was. There was, also, evidence which tended to prove that such a wire could be so insulated as that it would be rendered safe under the circumstances described, and that such insulation was in use for wires at points, where people were likely to come in contact with them, frequently. The plaintiff deposed that he supposed that the defendant's wire with which he came in contact was carrying a current of electricity, but that he had no knowledge of the voltage or whether it in fact contained an electrical current but that acting upon the rule of safety, he endeavored to avoid coming in contact with it at all. The defendant insists, that it was the duty of plaintiff in exercising care, for his own safety, to observe the condition of the insulation, and that if he had done so, he could and would have discovered the insufficient insulation of the wire, and then should have refused to go near to it. If the insulation had been burned off, as certain of the testimony tended to prove, the plaintiff, by inspection, could have discovered it and would doubtless have discovered it by a reasonable observation, but if the insulation was such as defendant's

evidence tended to prove it to be, it does not appear that plaintiff knew that it would be hazardous to come into proximity with the wire, although the same evidence proved that the insulation, as defendant's evidence proved it to be, was an insufficient protection from danger when in contact with it and at the same time in contact with a "grounded" wire. It is conceded that plaintiff's duty required him to go upon the pole and to take hold of the "messenger" wire in the prosecution of his duty, and that he was where he had a right to be. The defendant owed to him the duty of an inspection of its wires, at such point, and the highest degree of care, under the circumstances, to render them harmless. The plaintiff was not under any duty of inspection and had a right to rely upon the wires being so adjusted and insulated as to be as safe as they could be made, and was only bound to the exercise of such care for his own safety as an ordinarily prudent man would take, under similar circumstances. Before one as a matter of law can be held to have been so contributorily negligent as to be denied a recovery, because of having exposed himself to a known danger, the danger must be so imminent and obvious, that a person of ordinary prudence, under like circumstances, and with like knowledge, would not subject himself to it. Louisville Gas Co. v. Fry, 147 Ky. 757; Bowling Green Gas Light Co. v. Dean, 142 Ky. 678; F. E. I. Co. v. Anglea, 142 Ky. 539. There is no evidence which conduces to show that the plaintiff purposely or voluntarily came in contact with the wire of the defendant, but if his testimony is to be believed, he involuntarily did so, through accident or inadvertence and his coming in contact with it was made possible by the fact of the close proximity of the wire to the pole, and his injuries from the wire being protected with an insufficient insulation. It is, also, insisted by the defendant, that if the plaintiff had ascended upon the other side of the pole, that he would have escaped coming in contact with the wire of defendant, and that he negligently ascended upon the side of the pole where it was dangerous, instead of upon the other side, where the ascent was safe. Upon the other hand, there is evidence that upon the side of the pole opposite to the wire complained of, there were twelve of defendant's wires, some of which were within four or five inches of the pole, while other evidence tended to prove that the nearest was thirty-six inches

from the pole. There were, also, other wires upon the
opposite side of the pole from which the plaintiff as-
cended—guy wires, both of the defendant and of the
Louisville Ry. Co., and upon the whole the question as to
which side of the pole in the exercise of ordinary pru-
dence, he should have ascended, became a question for
the jury, and was so submitted. Upon all the facts, both
those disputed and those conceded, and the inferences
to be drawn from them, we conclude that the court could
not have taken the case from the jury, upon the ques-
tion as to whether the plaintiff was contributorily negli-
gent.

(c) The defendant insists that the court erred to
its prejudice in refusing two instructions to the jury in
which was set out in concrete form a portion of the facts
upon which it based its defense of contributory negli-
gence upon the part of the plaintiff, with directions, that,
if the jury found such facts to exist, from the evidence,
to find for the defendant, and instead gave to the jury an
instruction in the general terms usually made use of,
where the defense of contributory negligence is relied
upon. No objection is made to the instruction given
upon that subject, except that it was not in sufficiently
concrete form, and it may be added that another instruc-
tion, designated the 5th, which was offered by defendant,
contained in substance the instruction to the jury in the
same form, in which, they are set out in the instruction
given by the court. The two instructions offered were
properly refused, because they assumed facts to exist,
the truth of which was in issue, and from which the
instruction, as a matter of law, directed the jury to find
that the plaintiff was contributorily negligent. If the
instructions upon contributory negligence should have
been given in concrete form—that is to have set out in
the instructions the facts constituting it as shown by
the evidence—and if the ones offered were not technical-
ly correct, it follows, of course, that it would have be-
come the duty of the court to have prepared correct in-
structions in such concrete form, and given them to the
jury. L. & N. R. R. Co. v. Harrod, 115 Ky. 877; L. &
N. R. R. Co. v. King, 131 Ky. 356; West Kentucky Coal
Co. v. Davis, 138 Ky. 667; Lewis, et al. v. Hicks, et al.,
144 Ky. 711. While, as was said in Stearns Coal &
Lumber Co. v. Williams, 171 Ky. 46, the rule is now es-
tablished in this state, to give instructions presenting,

in specific and concrete form, each party's theory of the case, the failure to do so, touching contributory negli-gence, has not been held to be a ground of reversal, ex-cept in those cases where the instruction, in general terms, does not adequately present the defense. What the court meant in the case, *supra*, was that formerly the instructions upon contributory negligence, in every case, were couched in general terms, and that latterly, it has become permissible to give an instruction upon contributory negligence in concrete form. As said in S. C. & C. St. Ry. Co. v. Cleveland, 100 S. W. 283: "The court may with propriety point out, in a general and fair way, in an instruction defining contributory negli-gence, the elements that constitute it, as shown by the evidence." While, in a number of cases, a reversal has been granted because the instruction upon contributory negligence, in the usual, general terms, in which it was given, failed to properly present the defense as in Stearns Coal & Lumber Co., *supra;* L. & N. R. R. Co. v. King, 131 Ky. 347; Lexington Ry. Co. v. Van Laden's Admr., 32 K. L. R. 1047; Southern Ry. Co. v. Buckner, 113 S. W. 90; Louisville Ry. Co. v. Gaar, 112 S. W. 1130, and others. A reversal is not granted because of the failure to give concrete instructions touching contri-butory negligence, where an instruction in general terms, in the usual form, is given and it appears that with such instruction the issues are fairly submitted to the jury, and the defendant's defense adequately presented, which under the facts in this case, the instruction given seems to have fairly and sufficiently done.

(d)    The defendant did not anywhere allege that any negligence, either sole or concurring, of the Home Telephone Company, was a cause of the plaintiff's in-juries. It does aver that plaintiff made a claim for dam-ages against the telephone company upon the ground that it had negligently failed to provide him a safe place in which to work and which was a cause of the injury, and that by a compromise of the claim the plaintiff re-ceived from the telephone company the sum of $750.00. All of this the plaintiff admits, and no issue is made thereon in the pleadings. The plaintiff, however, alleged that the settlement was made and money received as a partial satisfaction, only, of his claim for damages, and not in satisfaction of his entire cause of action. This is admitted by defendant in its amended answer. Hence,

it is admitted that the plaintiff claimed that the negligence of the Home Telephone Company was a cause, in part, of his injuries, and that in satisfaction of his claim against it, it had paid him the sum of $750.00, but that this was only a partial compensation for his damages. When the attorney for defendant was making a statement to the jury of the facts which he was expecting to present in evidence he adverted to the settlement of plaintiff and the telephone company when an objection was made and sustained by the court, which, also, ruled that evidence would not be admitted touching the mere fact of plaintiff having made a claim of negligence against the telephone company, and having received $750.00 for a release of the claim. At the conclusion of the evidence the defendant offered an instruction to the effect that it was the duty of the telephone company to provide the plaintiff a safe place in which to work, and if its failure to do so was the sole cause of the plaintiff's injuries, to find a verdict for the defendant. The instruction was denied. Defendant now insists that the refusal of the instruction was error, as well as denying admission of proof of plaintiff's claim for damages against the telephone company, and the payment to him of the sum in settlement of his claim. With these contentions we do not concur. No issue is made in the case as to the negligence, either sole or concurring, of the telephone company and it was immaterial whether the telephone company was or was not negligent, if the injury was caused by the negligence of the defendant either alone or concurring with the negligence of the telephone company, or another, and no judgment could be recovered against the defendant, unless it was shown that the negligence with which it was charged was an efficient cause of the injuries. It is, also, impossible to see how the mere fact that the plaintiff had claimed that the telephone company's negligence had been a cause of his injury, and that it had settled the claim against it, would shed any light upon the question as to whether or not the negligence of the defendant caused or contributed to the injury. The plaintiff does not claim, either in his pleadings or in his evidence, that the telephone company was free of negligence or that his injuries were caused by the negligence of the defendant alone. The doctrine is well established that if the negligent acts of two or more parties concur in causing an injury, the victim may

proceed against them jointly for the damages, or he may proceed against one for the entire compensation for his injuries. City of Louisville v. Heitkemper, 169 Ky. 167; K. & I. B. Co. v. Snyder, 26 R. 951; Paducah Traction Co. v. Sience, 111 S. W. 356; Louisville Home Telephone Co. v. Gasper, 123 Ky. 128; Louisville v. Hart's Admr., 143 Ky. 171. Of course, if he should proceed against one and fails to show that the negligence of that one was an efficient cause of the injury, he must necessarily fail. If he succeeds, he is entitled to recover from the one sued the entire sum of damages to which he is entitled. If the right of contribution exists between the tort feasors, when such one has satisfied the judgment, he may proceed against the others, whose negligence, concurring with his, caused the injury, for indemnity. If the right of contribution does not exist between the tort-feasors in the particular case, one cannot secure indemnity from the others whose negligence concurred with his in causing the injuries, although he is compelled to satisfy the entire damages. Pugh v. C. & O. R. R. Co., 101 Ky. 77; 26 R. C. L. 765; City of Georgetown v. Graff, etc., 136 Ky. 665; City of Louisville v. Louisville Ry. Co., 156 Ky. 141. A party who has suffered an injury by the joint or concurring acts of negligence of two or more persons, may make a settlement with one and in consideration of a sum paid, release that one, and such settlement will not have the effect of releasing the other from liability, unless the sum paid is received in satisfaction of his entire injury. If the sum received from one tort-feasor is in part satisfaction, only, the recipient is not precluded from the right to recover the damages suffered by him from the other, although the other tort-feasor will be entitled to show the sum received by the complainant as a satisfaction, in *pro tanto,* of the damages to which he may be subjected. Louisville & Evansville Mail Co. v. Barnes, 117 Ky. 860. In the instant case, if the telephone company was a joint tort-feasor with the defendant, or if an independent and separate act of negligence of the telephone company concurred with the negligence of the defendant in causing the injury, and the plaintiff had received anything from the telephone company for a release of his claim against it, the defendant would be entitled to show and to receive the benefit of that sum in the settlement of the damages, as in any other case, but there being no issue upon the

subject of the amount received, or that it was received in partial satisfaction, only, there was nothing to submit to the jury upon that subject. The court having given the defendant the benefit of the payment by the telephone company, by crediting the judgment which plaintiff recovered against it, with the amount paid by the telephone company it has no cause of complaint. The question of the right of contribution between the defendant and the telephone company is not before us, and no opinion is given thereon.

The judgment is therefore affirmed.