## R. B. Tyler Company v. Kirby's Administrator.

(Decided March 11, 1927.)

### Appeal from Estill Circuit Court.

1. Negligence.—Where foreman took extra men on oil truck, who might be needed to do highway work, with promise that they would be returned to town in case they were not needed, one of men not needed, who was thrown from running board of oiler on return trip and killed, held invitee of company.

2. Negligence.—Operator of truck owes invitee duty to exercise reasonable and ordinary care in managing truck so as not to cause injury.

3. Negligence.—In action for death of prospective employe, on return from place of work, while riding as invitee on running board of oil truck, issue of negligence in operation of truck held for jury.

4. Negligence.—In action for death of invitee riding on running board of oil truck, and thrown therefrom by jerk when driver shifted gears, issue of contributory negligence held for jury.

5. Trial.—In action for death of invitee thrown from running board of oil truck by jerking of truck, instruction failing to point out specific duties of driver held cured by instruction to jury that it could not find for plaintiff, unless it believed failure of driver to

exercise ordinary care not to increase deceased's danger was sole cause of accident; such instruction being more favorable than defendant deserved.

6. Appeal and Error.—In action for death of invitee riding on running board of truck, instruction requiring jury to find failure of truck driver to exercise ordinary care not to increase danger was sole cause of accident, in order to find for plaintiff, held not ground for complaint by defendant, since it was more favorable to defendant than it had a right to demand.

7. Trial.—All instructions given by court must be read and considered together.

RIDDELL & SHUMATE and CHARLES W. MORRIS for appellant.

W. E. SETTLE, FRED P. CALDWELL, EZART ASHCRAFT and J. MOTT McDANIEL for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant, R. B. Tyler Company, in September, 1925, was engaged in oiling a highway which ran from Richmond in Madison county to Irvine in Estill county. Its foreman in charge of the work was R. L. Stafford. On the morning of September 5, Stafford dispatched a large truck, on which an oil tank was mounted, from West Irvine, which is just across the river from Irvine, to the Madison county line, where it was to meet the laborers who had been employed by the appellant to do the work in connection with the oiling of the highway mentioned. Fearing that all of the men whom he had engaged to meet the oiler at the Madison county line might not appear for work, Stafford told a number of men who were gathered about a store at West Irvine that, if they cared to, they could ride on the oiler over to the Madison county line, and, if any of the men he had engaged did not show up, he would employ so many of them as would be needed to fill out his complement of laborers, and that those who were not needed could return on the oiler to West Irvine. These men, among whom was the appellee's decedent, Robert Kirby, accepted Stafford's invitation. There was room on the seat of the truck but for one or two men besides its driver, Charles Bebins. The rest of the men, including Kirby, rode on the running boards and a sort of rear seat attached to the back of the oil tank. The trip out to the Madison county line was made without incident.

It developed that only one man of the crowd that went from West Irvine was needed; a man by the name of Yates being selected. The oiler then started on its return trip to West Irvine with the men, who had gone out from West Irvine, riding on it in the same fashion as they had on the outward trip. A short distance from West Irvine a side road running towards the home of the decedent, Robert Kirby, branched off of the highway, on which the truck was traveling. A number of the men who were riding on the truck, and who also lived down this side road, decided to alight from the truck when it reached this road, but it is not shown in this record that Robert Kirby purposed doing any such thing. As the truck was climbing a steep hill near to the point where this side road branched off, a majority of the witnesses for the appellee say that the driver shifted his gears, that when he did so the truck jumped and jerked, and immediately thereafter it "humped up" as though running over a log in the road, and that on looking back they discovered Robert Kirby lying in the road, having been run over by this heavy oiler, and so mashed that before the witnesses could reach him he had expired. Some of the witnesses did not feel the jerk before they felt the oiler "hump."

The decedent's half-brother testified that, because some boys were throwing rocks, he, although he had been sitting on the rear seat of the oiler, was standing up just as the truck gave the jerk, and he saw his half-brother Robert Kirby, who was then standing on the running board and holding to the tool box, jerked loose by the force of the jump and jerk and thrown under the truck. This witness described the jerk as similar to the way an empty box car in a long freight train jerks and jumps when the freight train is suddenly stopped. It is true this witness was somewhat discredited by impeaching testimony, but it was for the jury to say whether they believed him or not. Another witness described the jerk as a big jump forward. All of the witnesses who felt the jerk, except the decedent's half-brother, say that the jerk was no more severe than had been the jerks every time the driver shifted his gears on both the outward trip and the return trip up to the time of the accident. It is agreed that no warning was given by the truck driver to any one that he was going to shift his gears, and it is further agreed that all of the witnesses, except decedent's half-brother, were so placed on the truck as not to see the decedent at the time he went under the wheels of the truck.

The appellant's driver denied that he had shifted the gears at the time Robert Kirby fell, if he did fall, from the truck. He stated, and all of the witnesses corroborate him in this respect, that he was going but 4 miles an hour at the time of the accident. He admitted that he would have had to change his gears in the next 15 or 20 feet. The court submitted the case to the jury under instructions we shall presently discuss, and it returned a verdict for the appellee in the sum of $7,500. From the judgment entered on that verdict, this appeal is prosecuted.

The main contention of the appellant is that it was entitled to a peremptory instruction. The first question we have to determine is what was the relationship existing between the decedent and the appellant at the time of the accident. Relying on the case of Beard v. Klusmeier, 158 Ky. 153, 164 S. W. 319, 50 L R. A. (N. S.) 1100, Ann. Cas. 1915D, 342, appellant insists that he was but a bare licensee. The appellee insists that the relationship was that of master and servant or at least, as he says, a "quasi such relationship." Neither of the parties is correct. In the case of Dickerson v. Bornstein et al., 144 Ky. 19, 137 S. W. 773, the facts were these: A contractor engaged in erecting a building had need of two hod carriers. He instructed his foreman to telephone the hod carriers' union to send over to the building two men. This the union did. On arriving at the building, the hod carriers were informed that the foreman was up on the fourth floor, and they were told to go up there and see him relative to securing employment. On their way up they had to cross a place which appeared to them to be a solid floor, but which in fact was a hole covered with some loose trash. On stepping upon the trash one of these men fell through the hole to the basement and was severely injured. He brought suit against the contractor, pitching his action on the theory that he was at the time of the accident the servant of the contractor. We said:

"He (the hod carrier) had not been employed when he was hurt, but was at the building seeking employment. The relation of master and servant did not exist. It is true he was at the building by invitation and was attempting to go upon the ladder by the direction of the man who had telephoned for him to come. But this fact did not show any right to recover under the allegations of the petition."

The rest of the opinion plainly intimates that this injured man was at the time of the accident an invitee of the contractor.

In the case of L. E. Meyers' Co. v. Logue's Adm'r, 212 Ky. 802, 280 S. W. 107, the facts were these: The deceased, who had been employed by the Meyers' Company, but who had left its services, went to its place of business to collect the wages he had earned, and which were yet unpaid. While on the premises of the employer for that purpose, he was killed. We held him to be at the time an invitee, saying:

"While it has been said by this court that the distinction between an invitee and a licensee is oftentimes shadowy and indistinct, we have found no difficulty under the facts of this case in distinguishing them. An invitee to a place of business is one who goes there either at the express or implied invitation of the owner or occupant on business of mutual interest to them both, or in connection with the business of the owner or occupant which is there being carried on; while a licensee is one who goes upon the property of another, either by express invitation or with his implied acquiescence, not on any business of the owner or occupant, but solely in pursuit either of the licensee's own business, pleasure, or convenience."

In the well-reasoned case of Warner v. Mier Carriage Co., 26 Ind. App. 350, 58 N. E. 554, 59 N. E. 873, the court held that one who was being shown over the premises of a prospective employer by such employer for the purpose of being made acquainted with the duties he would have to perform as a watchman in the event the parties entered into such a contract of employment was an invitee and not a licensee.

In the case before us, Robert Kirby was plainly an invitee. He was on this oil truck by the express invitation of the appellant through its foreman. He was there on business of mutual interest to them both, or at least in connection with the business of the appellant. It was to the latter's interest that it be assured a full supply of labor at the place where it was oiling the highway. For this reason, it invited Robert Kirby to ride on its oil truck to this place, and promised, in the event it did not need his services, to return him whence he came. It is because of these facts that this case is distinguishable

from the Beard Case relied on by appellant, which held that a *social* guest in an automobile is a licensee. Kirby was not a social guest. He was on the oiler by express invitation and on the mutual business of himself and the appellant, or at least on the business of the appellant. This made him an invitee and not a licensee. Kirby being an invitee, the measure of appellant's duty to him was that of exercising reasonable and ordinary care in the operation and management of the truck so as not to injure him. Such is the standard of care due all invitees. This is an elementary principle that scarcely needs authority to support it. 29 Cyc. 453.

Keeping these principles in mind, we think that this was a case plainly to be submitted to the jury unless Kirby was, as a matter of law, guilty of contributory negligence, a matter we shall hereafter discuss. In the trial of jury cases, jurymen are expected to bring to the solution of the cases they hear the experience and knowledge which the average man acquires in the ordinary affairs of life. Automobiles are now so common and the use of trucks is now so universal as to carry home to the average man some of the elementary facts connected with their operation. While it is true that in the management and operation of all automobiles the shifting of gears carries in its train some disturbance of the machine, yet, if properly shifted and the gas is properly fed to the engine, the shifting of gears does not carry with it the necessity of a truck jumping forward or shaking like a box car in the manner described in this evidence. Therefore, in the light of the testimony as to the character of the jerk which this truck gave at the time the gears were shifted, it was for the jury to say whether or not ordinary care had been used in the management and operation of the machine at that time.

It is insisted, however, that, as the decedent had ridden over to the Madison county line and back to the scene of the accident on this truck, and therefore must perforce have observed the character of the jerks this machine gave when its gears were shifted, and inasmuch as all of the witnesses say that the jerk which the machine gave when the decedent fell therefrom was no more violent than the other jerks which the machine had given whenever its gears were shifted, appellee's decedent having continued to ride on the machine after such notice of its jerkings and the character thereof when the gears were shifted had been carried home to him, was guilty of

contributory negligence as a matter of law in continuing so to ride. In this we think the appellant is in error. In Louisville Gas Co. v. Fry, 147 Ky. 754, 145 S. W. 748, we said:

> "It is not in every instance where one exposes himself to a known danger and injury results that he is denied a right to recover, but only in that class of cases where the danger is so obvious and imminent that a person of ordinary prudence under like circumstances would not subject himself to it."

In Louisville Gas & Elec. Co. v. Beaucond, 188 Ky. 725, 224 S. W. 179, we stated the same principle in these words:

> "Before one as a matter of law can be held to have been so contributorily negligent as to be denied a recovery because of having exposed himself to a known danger, the danger must be so imminent and obvious that a person of ordinary prudence, under like circumstances and with like knowledge, would not subject himself to it."

And to the same effect is the text in 29 Cyc. 518.

In the case before us, Kirby had made the outward journey from West Irvine without mishap. He had ridden on the oil truck in the same fashion in which he was riding at the time of the accident. Other men had ridden on the truck on the outward trip in the same way he had, and although the truck did jump and jerk when the gears were shifted, no one had been thrown or jerked from it. On the return trip the same conditions prevailed. In the light of these facts, it cannot be said that what danger there was, even if known, was so imminent and obvious that no person of ordinary prudence under like circumstances and with like knowledge would have subjected himself to it. It follows that we cannot hold that Kirby was guilty of contributory negligence as a matter of law. It was for the jury to say whether he was so guilty or not. Appellant, then, was not entitled to a peremptory instruction on this ground.

Before closing this branch of the case, we wish to state that we have not overlooked the compromise settlement pleaded in this case. The court below held it invalid, as it plainly was. The appellant has laid no stress in this court upon this action of the trial court, and neither will we.

It is next contended that instruction No. 1 given by the court was erroneous. No complaint is made of instructions Nos. 2, 3, and 4. Instructions Nos. 5, 6, 7, and 8 were given on appellant's own motion. Of these, instruction No. 5 was far too favorable to appellant, as it was predicated on appellant's theory that the decedent at the time of the accident was a licensee. In substance it told the jury that it could not find for the appellee unless the jury believed that the *sole cause* of the accident was the failure of the driver of the truck to exercise any of the duties pointed out in that instruction, which duties were to exercise ordinary care, not to increase any danger Robert Kirby was in as he rode along on the running board of the truck, and to exercise ordinary care so to operate the truck as to avoid the creation by wilful act of any such new danger to Kirby. Conceding without deciding that instruction No. 1, given on the motion of the appellee, was erroneous because too general and because of its failure to point out what specific duties were due the appellee's decedent by the driver of the truck, yet, as all of the instructions must be read and considered together, and as the fifth instruction plainly told the jury that it could not find for the appellee unless it believed that the *sole cause* of the accident was the failure of the driver of the truck to perform the duties set out in that fifth instruction, whatever ambiguity there was in the first instruction was cured by the fifth instruction of which appellant may not complain, as it was given on its motion. As the jury was not warranted in finding for the appellee except that it believed the driver of the truck had failed to perform the duties set out in that fifth instruction, it had to find in this case much more than the law required, because, as stated, this instruction was based on the theory that the appellee's decedent was a licensee rather than the invitee he was. The instruction was more favorable to the appellant than it had a right to demand. Something is said by appellant about the verdict being flagrantly against the evidence, but the essential facts of this case were not in much dispute, and it was peculiarly a case for the jury.

Finding no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.