### Ben H. Auxier, et al. v. A. E. Auxier, et al.

### Ben H. Auxier, et al. v. Williams Coal Company, et al.

(Decided December 17, 1918.)

## Appeals from Johnson Circuit Court.

1. Descent and Distribution—Suit to Settle Estate—Infants.—Under the provisions of section 428 of the Civil Code, a representative, among others, may bring a suit to settle a decedent's estate; and the word "representative" as used in the section, according to subdivision 19, section 732 of the Code, is either the personal or real representative, hence an heir may bring a settlement suit as provided by section 428, and if the suit is brought by the guardian representing the heir in which the infants are made defendants and are summoned and represented by duly appointed guardian ad litem, it will be sufficient.

2. Guardian and Ward—Infants—Parties.—A statutory guardian in his own name as such may maintain a suit under the provisions of section 490 of the Civil Code without his infant wards as heirs being made parties, but if they are made parties-defendant, a summons served upon them reciting that the suit was filed by one of the adult defendants instead of by the guardian is not void, especially when that particular suit was the only one pending against the infants and they were duly represented by guardian *ad litem*. But if otherwise the judgment would be neither erroneous nor void since the infants were not necessary parties.

STRATTON & STEPHENSON for appellants.

HAGER & STEWART, FOGG & KIRK, WHEELER & WHEELER, VAUGHAN & HOWES and C. B. WHEELER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Responding to petition for rehearing, sustaining it in part and overruling it in part.

In the former opinion rendered in the above cases (180 Ky., 518), which were consolidated here and heard together, we directed a dismissal of the appeal in the first case because it was not prosecuted as held within the time prescribed by section 391 of the Civil Code after appellants arrived at the age of twenty-one years, and in their petition for rehearing protesting against that portion of the opinion, our attention is called to the fact that the judgment for reasons cited in the opinion was not subscribed on the court docket by the special judge who rendered it, and was not subscribed at all until a much later date, but that the appeal was prosecuted within the time prescribed by law from the date the judgment was actually subscribed. We acknowledge the oversight, as well as the error in directing the appeal in that case to be dismissed, and the portion of the opinion so directing is now withdrawn. It then becomes necessary to determine whether the judgment in that case was so erroneous as to require its reversal.

But little space will be taken in stating the facts, since most all of them which are relevant appear in the former opinion. It is now insisted, in addition to what appears in that opinion, that the judgment should be reversed because, conceding that the suit was brought under the provisions of section 428 of the Civil Code, the guardian had no authority to maintain it, since no one is authorized to bring it except "a representative, legatee, distributee or

creditor of a deceased person." The argument is that
neither the guardian nor his wards whom he represented
belong to either of the classes of persons whom the Code
provision designates might maintain the suit. It might
be conceded that the wards were neither legatees, distrib-
utees nor creditors in this case, but they most certainly
were representatives. The term "representative," as
used in the section, is not confined to "personal represen-
tative," which term applies to the fiduciary of a de-
ceased person who has authority to take charge of and
distribute personalty belonging to the estate of his de-
cedent, and which definition is the one given to it by sub-
division 17 of section 732 of the Civil Code. Subsection
19 of the same section says: "The word 'representative'
includes personal and real representatives." All juris-
dictions acknowledge that heirs are real representatives,
so that at least the infants here could have maintained
the suit as a settlement suit. We do not think the fact
that they were made defendants instead of plaintiffs in
a suit where their guardian was plaintiff alters the status
of the suit so as to render proceedings had under it er-
roneous. Moreover, the judgment complained of under
which the Martin county lands were sold was rendered
partly upon that branch of the suit which sought a settle-
ment of the estate of John B. Auxier, the grandfather of
appellants, and was set on foot not only by the petition
but also by the answer of the adult defendants, children of
John B. Auxier, and who were uncles and aunts of the ap-
pellants. The proceedings may not have been prosecuted
in the form which such suits usually are, but we find noth-
ing in the record justifying the criticism made by counsel.

Furthermore, the petition sought a partition and di-
vision of the lands of John B. Auxier, the grandfather,
among his heirs, one-eighth of which appellants were en-
titled to as the children of their father, S. B. Auxier.
Such a suit may be brought in the name of the guardian
without the infants being made parties, under the facts
developed by this record. Henning v. Barringer, 10 Ky.
Law Reporter, 674; Powers v. Powers, 12 Ky. Law Rep.
793; Smith v. Leavell, 16 Ky. Law Rep. 609; Garr v.
Elble, 16 Ky. Law Rep., 661; Shelby v. Harrison, 84 Ky.
144, and Howard v. Singleton, 34 Ky. 336. So that whether
we regard the suit as exclusively one for the settlement of
the estate of S. B. and John B. Auxier, or for the sale of

appellants' land for the purpose of division, it was properly maintainable in the form in which it was brought.

But it is further insisted that there was no summons in the case, inasmuch as the one issued and served recited that defendants (infant appellants) were called upon to answer the suit filed by "A. J. Auxier" instead of by their guardian, "A. J. Webb," and that this was such an error as not only to render the proceedings erroneous, but null and void. We can not agree with this contention, for, conceding that the record is sufficient to show that the character of summons referred to was the only one issued or served upon appellants, the oversight in writing the plaintiff's name therein as "A. J. Auxier" instead of "A. J. Webb" was but a clerical one, superinduced, no doubt, because one of the defendants was A. J. Auxier. The defendants, like adults, were called upon by the summons to appear in the Johnson circuit court to respond to a suit filed by some one against themselves. So far as the record shows there was no other suit in which they were parties except the one filed by their guardian, and it was in that suit that a guardian *ad litem* was appointed to defend for them. From that time on, at least, they had knowledge of the suit that they were called upon by the summons to defend, and to which suit their statutory guardian was not only a party, but he had actually instituted it. He was there to defend their interests, as was also the guardian *ad litem* appointed by the court, and it is not pretended that any one was deceived because of error of the clerk in mistakenly writing the name of "A. J. Auxier" in the summons instead of that of "A. J. Webb." If parties desired to correct that clerical oversight, it could have been done at once by calling the court's attention to it, but this was not done.

We do not feel inclined in a case like this, where the parties appeared, their rights litigated and every step taken to guard their interests, to reverse the judgment for such an insignificant and nonprejudicial omission. But, if we are mistaken in this position, there was still no error, since the suit could have been brought, under the authorities, *supra*, by the guardian alone, without making the infants defendants, and if this could be done there would be no error founded upon an erroneously worded summons which was altogether unnecessary, however wide its departure from a correct one.

It is insisted that the original opinion was in error when it said that the court entered the judgment appealed from in the first case *nunc pro tunc* after the second case was filed, it being claimed that all that was done at that time was a subscribing of the judgment in the first case by the then presiding judge of the court. It is true that such seems to have been the opinion of the court below, but we do not fully agree with him as to the effect of what was actually done by him. As will be seen from the former opinion, the judgment of sale now complained of was rendered, but was not properly entered upon the record, and what the court below did was to make the judgment then rendered effectual from the date of its entry. In other words it did an act at the time (*now*) which should have been done *then,* and this, as we understand it, is a *nunc pro tunc* order. But whether there exists any technical difference between a *nunc pro tunc* entry of a judgment and a *nunc pro tunc* subscribing of a judgment as is insisted upon by appellants, we do not find any difference in the effect of the two orders upon the originally rendered judgment, whether the omitted fact was an entire failure to enter it, or an improper entry of it. Other matters involved are dealt with and disposed of in the opinion, to which we adhere.

Wherefore, so much of the original opinion as dismissed the first appeal is withdrawn, and the judgment therein is affirmed. To this extent the petition for a rehearing is sustained, but in all other respects it is overruled.