## Kentucky-Tennessee Light & Power Co. v. Priest's Adm'r.

Feb. 7, 1939.

George K. Holbert, Judge.

CARY, MILLER & KIRK and WALLS & KINCHELOE for appellant.

J. R. LAYMAN and P. M. BASHAM for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

O. F. Brite, administrator of the estate of Dewey Priest, deceased, brought this action against the Kentucky-Tennessee Light and Power Company to recover damages for the death of Priest, who was electrocuted August 12, 1936, when he came in contact with an electric wire owned and maintained by the defendant. The plaintiff recovered a judgment for $7,500 and the defendant has appealed.

Priest was employed by Mathias Hook, who owned a corner lot, fronting on Depot street in Hardinsburg and on the west side extending along Main street. A two-story residence was located on the lot and during the summer of 1936 this was moved back by Hook, who intended to construct a sales and service garage on Depot street. A steam shovel was moved onto the lot to do the excavating work for the garage. The appellant strung 110-volt wires from a pole across the street from Hook's lot to a point on the lot for the purpose of furnishing current to Hook in connection with the con-

struction work. These wires were attached to a pole on the Hook premises at a height of about 12 feet from the ground, and were run straight down the pole to a socket connection. The socket connection was for the purpose of inserting a rubber insulated cord which could be carried around over the construction work to whatever point it was needed. It appears that the pole, as located by appellant, interfered with the operation of the steam shovel, and Hook moved it about 40 feet from the working place. When the pole was relocated, the wires were about three feet higher from the ground than they were at their former location. About 6 o'clock in the evening of August 12, 1936, the workmen on the ground started to move the steam shovel from the lot, the work of excavating having been completed. It was moved toward the rear of the lot, and, as it approched the electric wires, it was observed that the steel boom of the shovel was about to come into contact with the wires and that it would be necessary to raise them to permit it to pass. Hook was present, and said: "Someone get a board and raise those wires." One of the employees did get a board, but he was unable to raise the wires a sufficient height to permit the steel boom to pass under them. At this point Dewey Priest climbed up the steel ladder on the boom of the steam shovel, sat down on the tip end of the boom, reached back to his right, and undertook to lift the wires over his head. When he took hold of the wires, he said: "These wires are hot." He fell on the steel boom of the steam shovel, pinning the wires beneath his body, and was electrocuted.

The plaintiff charged in his petition that the defendant negligently strung the electric wires across the Hook lot, and over and across the passway on the lot so low and in such a position as to endanger those using the passway for the purposes of the construction work and negligently failed to use wire that was so insulated as to prevent injury to those coming in contact therewith, and negligently spliced one or more of the wires so as to leave exposed parts of same in such a manner as to be dangerous to those using the passway, and, while in that condition, negligently permitted the wires to sag so low as to be in the way and dangerous to persons working on the premises. The answer was a traverse and a plea of contributory negligence.

We have concluded that the judgment must be re-

versed because of a statement made in the presence of the jury by the county judge of Breckinridge county, which, in the light of the facts, was clearly prejudicial, but, before discussing that question, we shall consider two preliminary questions raised by appellant. An amended answer and cross-petition, in which the defendant sought to make parties to the action Mathias Hook and his insurance carrier because of the pendency of a compensation claim by Priest's father and mother as his dependents, was filed. The cross-petition was dismissed, and appellant complains of this action of the court.

The dismissal of the cross-petition was not error. The extent of appellant's liability was not dependent upon nor affected by the fact that the deceased and his employer were operating under the Workmen's Compensation Act. Section 4890 of the Kentucky Statutes permits an injured employee whose injury has been caused by the negligence of a third person to proceed both against the employer for compensation and such other person to recover damages, but he may not collect from both, and, if compensation is awarded, either the employer or his insurance carrier, having paid the compensation or having become liable therefor, has the right to recover in his or its own name or that of the injured employee from the other person in whom liability for damages exists, not to exceed the indemnity paid and payable to the injured employee. It was not alleged in the petition that an award had been made or that the employer or his insurance carrier had paid or become obligated for any amount as a result of Priest's death. Clearly, they were not necessary parties.

It developed during the trial that certain orders appearing on the county court order book had not been signed by the county judge, and, on the plaintiff's motion, the county judge was directed to sign them. This he did in the presence of the jury while the deputy county clerk was on the witness stand. It appears that Cecil Dowell was appointed administrator of the estate of Dewey Priest on December 15, 1936, and on January 4, 1937, was removed as such administrator, and O. F. Brite was appointed administrator. The orders showing the removal of Dowell and the appointment of Brite were signed by the county judge during the progress of the trial when the testimony of the deputy county clerk disclosed that they had not been signed, though entered in the county court order book, and appellant complains

of this, but we think the action of the trial court in permitting the county judge to sign the record was proper. The rights of appellant were not prejudicially affected. The orders had been actually entered by the clerk as directed by the county judge, and when the latter signed them they became effectual from the beginning. Cunningham v. Grey, 271 Ky. 84, 111 S. W. (2d) 579; Auxier v. Auxier, 180 Ky. 518, 203 S. W. 310; Auxier v. Auxier, 182 Ky. 588, 206 S. W. 789. When the county judge was first called to sign the order on the book in the hands of the deputy county clerk, who was on the witness stand, he offered to explain why the order had not been signed, and the court sustained an objection to any statement by him and directed him to sign the order, which he did. A few minutes later he was called to sign another order, when this occurred as shown by the record:

"At this point counsel for plaintiff again called upon the County Judge, Pal Garner, who was sitting in the court room, to again come around and sign the order book which was in the hands of the witness. Defendant, by counsel, objected, and the Court being advised, overruled said objection and directed the County Judge to come forward and sign the order, to which ruling of the Court the defendant excepted. Thereupon, the County Judge came forward to sign the order on the order book in the hands of the witness on the stand, to which the defendant objected and the Court being advised, overruled said objection and directed the County Judge to sign the order, which he did, and he said:

"Judge Garner: Now Judge, let me tell you how this happened—

"Mr. Kirk: All we want him to do, Judge, is just sign the order.

"Judge Garner: Well, you killed the boy, why don't you come on and pay these people."

Thereupon the presiding judge said: "Judge Garner, we don't want to get a lot of this in this record here—just sign the order."

Counsel for the defendant moved to discharge the jury, but his motion was overruled. It is earnestly insisted by appellant that it would be hard to conceive of a more highly prejudicial incident than the foregoing, and in this view we concur. The case was a close one on

the facts. Such a statement made in the presence and hearing of the jury by a prominent and influential county official could not be other than prejudicial. The presiding judge did not reprimand the maker of the unwarranted and poisonous statement nor did he expressly admonish the jury not to consider it or permit it to influence them in any manner. It is doubtful that an admonition could have removed the evil effects of the statement. That it was prejudicial under the circumstances admits of no doubt.

Appellant insists that it was entitled to a peremptory instruction because the appellee failed to sustain the burden of proof as to either of his specific allegations of negligence or as to any negligence, and because Dewey Priest was guilty of contributory negligence as a matter of law. There was ample evidence to take the case to the jury on the question of appellant's negligence. Lewis Dunn, an employee of Mathias Hook, was present when Robert Jolly, appellant's lineman, strung the wires across the Hook lot and assisted Jolly in the work. He testified that the insulation or wrapping on the wires was old and worn; that the wires had been spliced, and were not insulated at all at these points. He called Jolly's attention to these defects, and told him that the wires were dangerous. Other witnesses testified as to the condition of the wires, and stated that apparently they were old wires that had been spliced, and that the splices were not taped. It was also shown that Priest took hold of the wire near one of these splices.

Appellant was required to exercise the highest degree of care and skill known in the conduct of its business to prevent injury to persons at any place where they had a right to be. Watral's Adm'r v. Appalachian Power Company, 273 Ky. 25, 115 S. W. (2d) 372; City of Madisonville v. Nisbet's Adm'r, 270 Ky. 248, 109 S. W. (2d) 593; Kentucky Utilities Company v. Woodrum's Adm'r, 224 Ky. 33, 5 S. W. (2d) 283, 57 A. L. R. 1054. The appellant's linemen and its superintendent who strung the wires across the Hook lot were on the Hook premises during the excavation work. They knew the location of the wires, and that the steam shovel, if moved off the lot onto the street in the rear, would not pass under the wires. That it might be so moved, and that it would be necessary to raise the wires to permit it to pass were contingencies which appellant could have

reasonably anticipated. It could have reasonably anticipated also that someone might come in contact with the wires, and be injured just as Dewey Priest was injured. One who is engaged in the distribution of electricity must take cognizance of the apparent probability of danger, and, where a defect in its distribution system might cause injury to a person who is in a place where he has a right to be, failure to remedy it will constitute negligence. Kentucky Utilities Company v. Black's Adm'x, 244 Ky. 562, 51 S. W. (2d) 905; Louisville Gas & Electric Company v. Beaucond, 188 Ky. 725, 224 S. W. 179, 185. The decedent's act of going upon the steel boom of the shovel to raise the sagging wires was not negligence per se. It was a quick, easy, and effective way to solve the difficulty, and was a normal thing to do. He had the right to assume that the wires were properly insulated and were not dangerous. As was said in Louisville Gas & Electric Company v. Beaucond, supra:

> "Before one as a matter of law can be held to have been so contributorily negligent as to be denied a recovery because of having exposed himself to a known danger, the danger must be so imminent and obvious that a person of ordinary prudence, under like circumstances and with like knowledge, would not subject himself to it."

Whether or not the deceased was guilty of contributory negligence was a question for the jury.

Some complaint is made of the instructions, but they correctly presented the issues raised by the pleadings and the proof.

For the reasons indicated, the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.