## KENTUCKY & WEST VIRGINIA POWER CO. v. GOODMAN.

Court of Appeals of Kentucky.

Jan. 30, 1953.

Rehearing Denied May 22, 1953.

Baird & Hays, Pikeville, J. W. Howard, Prestonsburg, for appellant.

Woodrow W. Burchett, C. Kilmer Combs, Prestonsburg, for appellee.

CULLEN, Commissioner.

Dewey Goodman, while engaged in clearing brush and undergrowth from a strip of

mountain land across which ran a high-tension electric line of the Kentucky and West Virginia Power Company, chopped down a small tree, the top of which fell against one of the wires. Goodman either had hold of the tree with his left hand as it started to fall, or grabbed it as it began to fall, or took hold of it after it hit the wire. The current ran down the tree and through his body into the ground, and he was electrocuted. There was no eyewitness to the accident, but a neighbor woman, immediately after the accident, heard a sizzling sound and upon looking in that direction saw Goodman with his hand on the tree, the top of the tree against the wire, and fire running down the tree. When other witnesses arrived at the scene, the tree had fallen to the ground, Goodman's body was lying just below the stump, and his axe was lying just above the stump. A burned mark on the tree indicated that Goodman's left hand had been in contact with the tree about four and one-half feet from its base.

Upon a jury trial, Goodman's administrator was awarded $15,000 damages for wrongful death. From the judgment for that amount entered against it, the power company appeals.

The power company maintains, first, that it was entitled to a directed verdict, because (1) the company was not shown to be negligent, (2) any negligence on its part was not the proximate cause of the accidence, and (3) Goodman was contributorily negligent.

■■ Negligence was sought to be established in failing to insulate the wires, in not placing the wires a safe distance above the ground, and in permitting underbrush and trees to grow up in and around the wires. The wires were three in number, carrying 44,000 volts. They were attached to wooden poles, about 20 feet in height. The poles had a single cross-arm at the top, with one wire attached to each end of the cross-arm, and the other to the top of the pole, with glass insulators. There were no "high voltage" signs on the poles, and the wires were black in appearance, so that the lack of insulation was not obvious. The poles were 207 feet apart, and the wires were from 17 to 20 feet above the ground.

The land over which the power line ran was a strip of rough, hillside land, paralleling a road, with a width of around 300 or 400 feet between the road and the tall timber. It had been fenced for many years, and was used as pasture land by the owner. The power company's easement was not of any specified width, and did not grant the right of exclusive use, the landowner having reserved the right to use the land for agricultural purposes. Approximately 10 years before the accident, the power company had cleared the land below the power line, but since that time the land had grown up in brush and small trees. The land had a steep slope, of from 25 to 30 degrees, and the tree in question was located 10 feet above the power line, which runs parallel with the road.

The tree was a small poplar, 25 feet in height, with a diameter of four inches at the stump. From the stump to the closest wire was a distance of some 17 feet.

A few days prior to the accident, the landowner had cleared some of the land near the power line. Goodman, on the day of the accident, was continuing the clearing job, apparently under some kind of an agreement or understanding with the landowner as to using the land for pasturage. Goodman had cleared up the hillside, below the power line, and undoubtedly was aware of the presence of the wires, although it is not established that he knew the wires carried high voltage.

As concerns the negligence of the power company, there was no adequate showing of negligence in failing to insulate the wires. The proof tended to establish convincingly that wires carrying such voltage as these cannot be insulated. However, we are of the opinion that there was sufficient proof to take the case to the jury on the question of negligence in permitting the underbrush to grow up in and around the wires, and in failing to keep the wires a safe distance above normal objects on the surface of the ground.

In Kentucky-Tennessee Light & Power Co. v. Priest's Adm'r, 277 Ky. 700, 127 S.W.

2d 616, 619, this Court said that a power company was required "to exercise the highest degree of care and skill known in the conduct of its business to prevent injury to persons at any place where they had a right to be." In Green River R. E. C. C. v. Blandford, 306 Ky. 125, 206 S.W.2d 475, 477, we said:

"* * * The test is whether it (the injury) could have been reasonably foreseen or anticipated as likely to appear, taking into account the company's own past experience and the experience and practice of others in similar conditions. It is not that a particular act, which may have been unusual, could have been apprehended, but whether people would come in dangerous proximity and might be expected to do any reasonable thing while there from which injury would result. * * *"

In the case before us, we think that reasonable minds could conclude that the power company could reasonably have foreseen that a person clearing the underbrush might come in contact with the wires, being unaware of their presence because of foliage in and about them. While Goodman, because of the path he happened to follow in doing his work, probably did see the wires, that fact has nothing to do with the question of defendant's negligence.

As concerns proximate cause, it certainly could not be said as a matter of law that, if the power company was negligent in the respects hereinbefore discussed, such negligence was not a proximate cause of the accident. The mere fact that the wires were inanimate, and that some act by the plaintiff was necessary in order for the injury to occur, does not prevent the negligence of the defendant, in creating a dangerous situation, from constituting a proximate cause. Green River N. E. C. C. v. Blandford, 306 Ky. 125, 206 S.W.2d 475.

The most troublesome question in this case is that of contributory negligence. It appears that Goodman must have knowingly exposed himself to some danger, because he at least must have realized that there was some possibility that the wires carried high voltage electricity, although he may not have known that fact for certain. We think it is clear that he was taking some risk or chance.

In Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 725, 224 S.W. 179, 185, the rule as to voluntary exposure to danger is thus stated:

"Before one as a matter of law can be held to have been so contributorily negligent as to be denied a recovery because of having exposed himself to a known danger, the danger must be so imminent and obvious that a person of ordinary prudence, under like circumstances and with like knowledge, would not subject himself to it. * * *"

This statement of the rule was quoted with approval in Kentucky-Tennessee Light & Power Co. v. Priest's Adm'r, 277 Ky. 700, 127 S.W.2d 616.

We are not prepared to say as a matter of law that no person of ordinary prudence would have acted as Dewey Goodman did, under the same circumstances. It must be remembered that the tree was a comparatively small one, with a trunk small enough for a person to hold firmly in one hand. From the evidence, the jury could have believed that Goodman had his hand upon the tree as or immediately after he delivered the final severing blow with the axe, intending to direct the fall of the tree with his hand so that it would not touch the wires, and believing that he could accomplish that intent. Whether a person of ordinary prudence would have taken the same chance is, we think, a jury question.

It is our opinion that the defendant was not entitled to a directed verdict, and that the issues properly were for the jury. However, the appellant has brought to our attention an error in the instructions which we consider so prejudicial as to require that the judgment be reversed.

The first instruction predicated liability of the power company upon a finding that the company failed to exercise the utmost care and skill to keep its wires at such height from the ground or other objects as to make them free from danger to those

who might be brought in contact with the wires "while performing such work as could reasonably have been anticipated by the defendant". There is no complaint of this instruction. But Instruction No. 3, on contributory negligence, contained such qualifying references to the first instruction as, in our opinion, to confuse and mislead the jury. Instruction No. 3 was as follows:

"If the jury believe from the evidence that at the time of plaintiff's intestate's death, the said Dewey Goodman was negligent, and that his negligence contributed to cause or bring about his death of which the plaintiff complains, and that the said Dewey Goodman would not have been killed but for his negligence, in that respect, you will find for the defendant, but if the jury believe from the evidence that the said Dewey Goodman came in contact with said wire while performing work, as referred to in Instruction No. 1, and that said wire was not maintained in the manner required by Instruction No. 1, so as to be free from danger to him, and that the said Dewey Goodman was killed thereby, the jury ought not to find the said Dewey Goodman guilty of contributory negligence under this instruction, unless in so doing he failed to exercise that degree of care which ordinarily careful and prudent persons usually exercise under the same or similar circumstances."

The question of contributory negligence in this case is a close one. The defendant was entitled to a clear-cut instruction on the question. The instruction was so phrased that the jury might have believed that they had to make a choice as to whether the power company's negligence or Goodman's negligence caused his death. It is true that a somewhat similar instruction was approved in Kentucky & West Virginia Power Co. v. Riley's Adm'r, 233 Ky. 224, 25 S.W.2d 366, but in that case the reference to the negligence of the defendant was not inserted in the middle of a sentence defining contributory negligence, and introduced by the word "but" so as to suggest the contributory negligence of the plaintiff, and negligence of the defendant, were incompatible factors. In any event, we do not now approve of an instruction on contributory negligence which repeats and emphasizes the question of the defendant's negligence.

Actually, the instruction was so worded that the jury could have construed the phrase, "in so doing," near the end of the instruction, as meaning, "allowing himself to be killed by the defendant's negligence," so as to allow the plaintiff to recover unless he was not prudent in permitting the defendant's negligence to kill him.

The appellant complains of the failure of the court to give an offered instruction to the effect that if Goodman took hold of the tree after it hit the wire, he could not recover. We think that this instruction would have given undue prominence to particular facts, and that the defendant's theory of the case would adequately have been presented under a proper, general, contributory negligence instruction.

Some contention is made concerning the admission of evidence regarding the conditions and use of the land adjoining the tract on which the accident occurred. We find no error in this respect.

Some of the remarks made by counsel for the plaintiff in his argument to the jury are claimed to be inflammatory and prejudicial. We trust that upon another trial these remarks will not be made.

The judgment is reversed, for proceedings consistent with this opinion.

COMBS, J., not sitting.