**Joe BEAM, Appellant,**

**v.**

**Richard W. CALVERT, Appellee.**

Court of Appeals of Kentucky.

March 25, 1955.

J. Jerald Johnston, Frankfort, for appellant.

Leslie Morris, Marion Rider, Frankfort, for appellee.

STEWART, Chief Justice.

This appeal is from a judgment of $4,266.38 entered for appellee, Richard M. Calvert, for personal injuries sustained by reason of his being struck by an automobile driven by appellant, Joe Beam. Two grounds are urged for reversal: (1) The lower court should have directed a verdict for appellant; and (2) the damages assessed by the jury are excessive.

A summary of the testimony adduced reveals that on April 12, 1952, around 2:15 p. m., appellant was operating a 1933 model Ford northeastwardly from Frankfort towards Peak's Mill. About ten miles from Frankfort, as one approaches Elkhorn Creek from the south, one encounters a 50-foot concrete bridge. The road is practically straight up to this bridge, with only a very slight grade. Fifty feet farther on, there is a 30-foot wooden bridge, with iron railings on each side. The bridge across the creek, known as Knight's Bridge, is eighty feet beyond the wooden bridge. The road between the latter two bridges curves somewhat. The main bridge, a steel structure, is approximately one hundred feet long, its floor or roadway is twelve feet wide, and it has high railings on each side built into the superstructure.

Appellee was fishing from a seated position on the top railing on the west side of Knight's Bridge when he first glimpsed appellant's car coming toward him from the south. According to him, the automobile was being operated in "an erratic and anything but straight manner," but it was not shown nor is it contended that the car was being driven at an excessive rate of speed. As he observed its movement, the car struck the west side of the concrete bridge, that is, the side to appellant's left, scraped along it for a short distance, came off this bridge at an angle to the motorist's right and continued in a straight line through the wooden bridge.

As it neared Knight's Bridge, the vehicle was headed across the road toward the bank on appellant's right. Appellee testified it appeared to him the car was going to plunge into the creek, so he jumped off the guardrail onto the floor of the bridge, thinking he was going to have to "fish him (appellant) out of the creek." However, just before the automobile reached the edge of the bank, appellant managed to cut it back sharply to his left. As a consequence, he next struck the right corner of the main bridge and this caused him to travel diagonally to his left for a distance of fifty-four feet to a position where appellee, in an effort to elude the oncoming machine, was attempting to climb back up the guardrail. Appellee was

caught and rolled between the car and the bridge. He fell to the floor of the bridge as the car drove on.

Appellant did not stop. A few minutes later, one J. L. Lee came along in his car and took out after him. In a short time he returned with appellant, who was in a drunken condition. Two members of the state police were called and they arrived soon after the accident and placed appellant under arrest.

In insisting the jury should have been peremptorily instructed to find for him, appellant argues that with full knowledge of the hazard appellee took himself from a place of safety to one of obvious danger and was thereby guilty of contributory negligence as a matter of law. There exists, we believe, no factual basis for this contention.

When appellee came down on the floor of the bridge for the purpose of going to the aid of appellant, the latter's car was pursuing a course the average person might ordinarily assume would cause it to run over the bank at a point between the wooden bridge and Knight's Bridge. Appellee was back fifty-four feet from the south end of the main bridge and was standing beyond the line of traffic that appellant would normally traverse. The bridge was wide enough that there was an abundance of room to safely pass appellee if appellant had kept to his side of the road. Furthermore, it is difficult to conceive how appellee could have anticipated that the car would unexpectedly collide with the corner of the bridge on appellant's right, then swerve to the left and bear down upon him while he was in the act of climbing up the bridge railing.

It is fundamental, as we pointed out in Foreman v. Western Union, 228 Ky. 300, 14 S.W.2d 1079, 1081, that " 'contributory negligence is not imputable to any one for failing to look out for danger which he has no reasonable cause to apprehend.' " It is true one is required to foresee and provide against what usually happens and what is liable to happen, but one

is not bound to guard against what is unusual and unlikely, or what, as it is sometimes said, is only remotely probable. Jacobs v. Moniz, 288 Mass. 102, 192 N.E. 515. Even where one has exposed himself to a known danger, before he will be found to have been guilty of contributory negligence as a matter of law and a recovery denied on such basis, the danger must have been so imminent and obvious that a person of ordinary prudence, under like circumstances and with like knowledge, would not have subjected himself to it. Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 725, 224 S.W. 179; Kentucky-Tennessee Light & Power Co. v. Priest's Adm'r, 277 Ky. 700, 127 S.W.2d 616.

It should also be remembered that appellee's position on the floor of the bridge was rendered dangerous by the subsequent negligence of appellant after appellee had placed himself there. The failure of appellee to predict or forecast such subsequent negligence which resulted in his injury did not in itself constitute contributory negligence. The prevailing rule is that the mere knowledge of the presence of the offending instrument at or near the place where an injury is suffered does not raise a legal presumption of contributory negligence, unless it appear that the injured person has reason to apprehend danger from its mere presence. Guyan Chevrolet Co. v. Dillow, 264 Ky. 812, 95 S.W.2d 796.

When we sum up the principles we have recited, we are drawn to the conclusion that appellee's act was not an exposure of himself to a peril so apparent or so immediate that we should charge him with contributory negligence as a matter of law. The lower court properly submitted the question of appellee's contributory negligence to the jury.

The jury awarded appellee the sum of $4,000 for his "physical and mental suffering and any permanent impairment of his power to earn money." It is maintained this amount is excessive, because it is asserted it is not shown appellee sus-

tained any permanent injury. The record affords no foundation for such a claim by appellant.

After his injury appellee, a man of forty-eight, was taken temporarily to a hospital in Frankfort where he was treated by Doctor Esten Kimbel. He had bruises, contusions and lacerations on his legs, arms, back, body and head; and he had a rather severe cut on the inside of his right leg between the knee and hip. He was confined to his home for twenty-one days, during which time he suffered much pain. After he was able to be up, his right knee began to give him trouble and Doctor Kimbel sent him to Louisville to be examined by Doctor Charles F. Wood, an orthopedic surgeon. Doctor Wood treated appellee for more than a year.

Appellee testified that the injury to his knee has caused it to be unstable and sore; that he cannot now put any stress on it; and that he is unable to walk two blocks without stopping to rest. Doctor Wood was of the opinion that appellee has some "residual scarring and loss of normal tissue function in the ligaments and cartilages of the inner side of his knee" and that there will be some permanent injury to the knee. He also prescribed a special kind of heel for the shoe of appellee, designed to cause the outside of the heel to be higher than the inside, which it has been necessary that appellee wear. The view of Doctor Kimbel, with respect to appellee's disability by reason of the injury, is expressed in this language: "Since he has continued to suffer pain in the knee for 16 months after the injury, I am of the opinion that it is quite likely that he will continue to suffer pain in it for at least a considerable period of time, if not indefinitely."

In the recent case of Calhoun v. Sallee, Ky., 259 S.W.2d 63, 64, a verdict of $4,334.50 was held not to be an excessive sum allowed appellee, Sallee, as damages for injuries to the tendons, muscles and cartilages of a leg, although this person had suffered no broken bones. That opinion also quoted the doctor as saying that "appellee has had and will continue to have

for some time pain and swelling", and that "I doubt if it (the injured member) will ever be a perfectly normal leg again." Based upon these statements, it was held damages could rest upon a permanent disability and the amount awarded was not excessive. The Sallee case is so similar factually to the present one, as regards the character of injuries received, the after-effects of those injuries, and the sum approved as damages for the disability received, that we believe it is controlling on the question of damages in issue here. We therefore hold the evidence fully warranted a jury verdict bottomed upon permanent incapacity to appellee's knee and we believe the amount of the award is not excessive.

A procedural question was raised by appellee which we deem it unnecessary to discuss and resolve in view of the decision we have reached.

Wherefore, the judgment is affirmed.

CAMMACK, J., not sitting.