FISHER EQUIPMENT COMPANY, Inc., Appellant,

v.

Mildred H. WEST, Administratrix of the Estate of Carl J. West, Appellee.

Court of Appeals of Kentucky.

June 8, 1962.

Rehearing Denied March 22, 1963.

Robert P. Hobson, Fielden Woodward, John P. Sandidge, Woodward, Hobson & Fulton, Louisville, for appellant.

Arthur W. Grafton, Edgar A. Zingman, H. Wendell Cherry, Wyatt, Grafton & Sloss, Louisville, Harry B. Miller, Jr., Robin Griffin, Miller, Griffin, Marks & Stephens, Lexington, for appellee.

WADDILL, Commissioner.

Appellee, Mildred West, as administratrix, recovered a verdict and judgment of $125,708 for the alleged wrongful death of her husband, Carl West, due to the negligence of a crane operator employed by appellant, Fisher Equipment Company. As grounds for reversal appellant urges that: (1) Appellee is barred from recovering damages for her husband's death because he was contributorily negligent as a matter of law; (2) appellant is not liable for the negligent act of the crane operator since he was the loaned servant of Klug Construction Company at the time of West's death; (3) instruction #4 was prejudicially erroneous in that it presented an improper criterion for determining whether the crane operator was a loaned servant; (4) the trial court erred in permitting appellee's counsel to argue an improper basis for the recovery of damages before the jury; and (5) the verdict is excessive.

Appellant, who engaged in the business of renting construction equipment, was approached by the superintendent of the Klug Construction Company (hereinafter called Klug) about leasing a crane which Klug could use in the construction of a plant at Somerset. Appellant's president viewed the construction site and was told of the work to be done, whereupon he informed Klug's superintendent that he could supply a crane to perform the required work. Accordingly, they entered into a verbal agreement whereby appellant furnished Klug a transit crane with an operator and an oiler for a stated hourly rate.

On the day of the accident, which resulted in West's death, the crane had been used in performing several different jobs on the construction site, one of which required it to be operated under certain high tension wires located approximately thirty-five feet above the ground. Later that same day it became necessary to move some pipes from under these same wires. In positioning the crane for this latter task, the crane operator raised the boom and swung it over the top of the cab of the crane. As the boom approached the vicinity of the pipes, West, who was employed by Klug, took hold of the spreaders attached to the end of the steel cable suspended from

the boom. He was apparently preparing to attach them to the pipes. Immediately thereafter West was electrocuted when the crane operator caused the cable to be brought into contact with the high tension lines.

Appellant vigorously contends that West was contributorily negligent as a matter of law because he voluntarily exposed himself to an obvious danger and thereby assumed the risk of the event which caused his death. The testimony upon which this contention is based shows that West knew the pipes to be hoisted by the crane were located beneath uninsulated high tension wires, that these wires could easily be seen from the ground, and that West had no duty to take hold of the spreaders while the boom of the crane was in motion. However, there is other testimony which reveals that a short time before the fatal accident the crane operator had placed the boom of the crane beneath the high tension wires without difficulty, so that the workmen on the ground, such as West, could attach the spreader hooks into the materials beneath the wires, enabling the load to be moved. The crane operator stated that had he turned the crane around he would not have had the cab of the crane interfering with his operation of the boom. He also testified that, while he was getting the fifty-foot boom of the crane into position to go beneath the high tension wires, he did not look to see where West was located although he knew it was not unusual for the men working on the ground to take hold of the spreaders when the movement of the boom had stopped. In this connection there was testimony that the boom had been brought to a stop for several minutes before the cable came into contact with the high tension wires. Several eye-witnesses testified to the effect that the failure of the crane operator to lower the boom of the crane at the proper time had caused the cable to come into contact with the high tension wires. There was no showing that West knew the crane operator had vision in only one of his eyes.

The rule as to voluntary exposure to danger is stated in Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 725, 224 S.W. 179, as follows:

"Before one as a matter of law can be held to have been so contributorily negligent as to be denied a recovery because of having exposed himself to a known danger, the danger must be so imminent and obvious that a person of ordinary prudence, under like circumstances and with like knowledge, would not subject himself to it. * * *"

This statement of the rule was approved in Kentucky & West Virginia Power Co. v. Goodman, Ky., 257 S.W.2d 553 and in Kentucky-Tennessee Light & Power Co. v. Priest's Adm'r., 277 Ky. 700, 127 S.W.2d 616.

■ Upon the application of this rule to the facts shown in the instant case and the inferences that may reasonably be drawn from them, we are unwilling to say that reasonable men could not differ as to whether West acted as would an ordinarily prudent person under the same circumstances. The cases relied upon by the appellant to support a contrary view are not controlling as they are distinguishable upon their facts. Therefore, we hold that the trial court properly submitted the issue, as to whether West was contributorily negligent, to the jury.

Appellant urges that the crane operator was Klug's servant at the time of the accident and therefore appellant was relieved of liability. In Ambrosius Industries v. Adams, Ky., 293 S.W.2d 230, we re-examined our former opinions which had considered the "loaned servant doctrine" and concluded that the factors stated in Section 220(2) of the Restatement of the Law of Agency may be considered in determining its application.

■ In considering the testimony bearing on these factors we observe that appellant is engaged in the business of renting mobile cranes and furnishing persons to

operate them. The crane appellant supplied to Klug was valued at approximately $40,000 and its proper operation required skill and experience which none of Klug's employees possessed. The crane operator's wages were paid solely by the appellant. Notwithstanding these facts appellant argues that because Klug was in charge of the construction work on the site, Klug had the right of control over the details of the work. Much stress is laid upon the fact that the crane operator had followed certain verbal instructions and hand signals given to him by Klug's foreman with respect to the movement of the crane. The obedience to these so-called instructions showed cooperation rather than subordination since the crane operator stated in effect that he would obey only such of these instructions as he thought could be executed without harm to appellant's crane. Moreover, it is significant that, even though Klug could request appellant to remove the crane operator from the job site, only appellant had the authority to discharge him from his position as a crane operator. The fact that Klug could not discharge the crane operator is one of the reasons why the rule stated in Turner Construction Co. v. Garrett, Ky., 310 S.W.2d 786, is not controlling in the instant case. We believe that the evidence relating to the loaned servant question established that the crane operator was a servant of the appellant at the time of the accident as a matter of law.

Since we have decided that the crane operator was not the loaned servant of Klug the giving of instruction #4 could not have been prejudicial. Therefore, we do not approve or disapprove the form of this instruction.

■ Appellant contends that the trial court erred in permitting appellee's counsel to assign in his closing argument to the jury a value of $246,000 to the case by multiplying $6,000, representing West's annual earnings in 1957, by 41 years, which was West's life expectancy. In Kentucky & I. T. R. Co. v. Becker's Adm'r., 185 Ky. 169, 214 S.W. 900, wherein there was no evidence of the decedent's earning capacity, it was held permissible for the administrator's counsel to make calculations and deductions upon hypothetical earnings of the deceased to assist the jury in arriving at a verdict. As the reasoning in the last cited case is apparently sound, it would likewise be proper for appellee's counsel to make similar calculations since it was shown that West earned $6,185 the year before his death and had a life expectancy of 41.29 years.

■ Other objections during the trial were directed at a statement made by appellee's counsel in his argument to the jury to the effect that the measure of damages is how much earning power the estate has lost by reason of West's death without considering what it would cost him to earn that money. The trial court admonished the jury to be guided by the court's instruction "that it is damage to the estate by the destruction of the power to labor and earn money." The presumption is that the jury followed the admonition and therefore the alleged error was not prejudicial.

■ The final contention is that the verdict is excessive. The damages are exceedingly liberal. However, we have frequently said that verdicts of this character will not be disturbed unless they are so large and disproportionate to the probable loss to the estate as to strike us at first blush as being a result of passion and prejudice on the part of the jury. McCoy v. Carter, Ky., 323 S.W.2d 210; Temperly v. Sarrington's Adm'r., Ky., 293 S.W.2d 863. The evidence shows West was 29 years of age at the time of his death, and during his last four years he had substantially increased his annual earnings. His life expectancy was shown to be 41.29 years. The jury's award was about half of the amount shown by the evidence that West could reasonably be expected to earn. Under these circumstances we conclude that the verdict is not excessive.

Judgment affirmed.