**KENTUCKY UTILITIES COMPANY,**
**Appellant,**

v.

**AUTO CRANE COMPANY and Kentucky Machinery Company,**
**Appellees.**

**Charles E. DUNIGAN, Appellant,**

v.

**KENTUCKY UTILITIES COMPANY and Auto Crane Company, Appellees.**

Court of Appeals of Kentucky.

March 11, 1983.

Case Ordered Published by Court of Appeals May 27, 1983.

Discretionary Review Denied by Supreme Court Sept. 7, 1984.

Escum L. Moore, Jr., Turley, Savage & Moore, Lexington, for appellant, Charles E. Dunigan.

W.R. Patterson, Jr., John R. Martin, Jr., Landrum, Patterson & Dickey, Lexington, for appellee, Kentucky Machinery Co.

Robert L. Milby, Hamm, Milby & Ridings, London, for appellee, Auto Crane Co.

Lindsey W. Ingram, Stoll, Keenon & Park, Lexington, for appellant, Kentucky Utilities.

Before COOPER, HOWERTON and LESTER, JJ.

HOWERTON, Judge.

These appeals are from a summary judgment entered by the Laurel Circuit Court. The court concluded that Dunigan was contributorily negligent and that his negligence was a substantial contributing factor in causing his injuries. His complaint was dismissed with prejudice. The judgment further dismissed Kentucky Utilities' cross-claim against Auto Crane Company and its third-party complaint against Kentucky Machinery Company. Kentucky Utilities has filed its appeal merely to protect its rights against Auto Crane and Kentucky Machinery, in the event the summary judgment dismissing Dunigan's claim is reversed.

Dunigan presents four grounds for reversal. He argues that there are genuine issues of material fact concerning his contributory negligence and that it was, therefore, error for the trial court to grant a summary judgment. His second argument is that Kentucky Utilities Company violated a statutory safety standard and the defense of Dunigan's contributory negligence is unavailable to it. He next argues that since K.U. and Auto Crane are strictly liable, the defense of contributory negligence is not available. His final ground for reversal is that the appellees' conduct was wanton and in reckless disregard for his safety, and the defense of contributory negligence is not available to them.

Dunigan had been employed by Kentucky Machinery for three years. He was a field mechanic assigned to a large pickup truck equipped with a crane used to assemble heavy earth-moving equipment. Auto Crane was the manufacturer of the crane equipment. Dunigan had approximately six to eight months experience in using the crane. The boom could be moved up and down and could rotate 360°. It was operated by a hand-held remote control box connected to the crane by wires.

Dunigan had used the crane at a work site to attach a blade to a bulldozer. He was moving the boom back to its cradle when it came in contact with overhead electrical wires. Dunigan was severely injured and burned, and he has no memory of the accident.

Dunigan contends that he is entitled to a trial and that his expert witnesses could prove that the wires in question were located below the minimum vertical clearance prescribed by the National Electric Safety Code, which is the legal standard in Kentucky. He also contends that two expert witnesses would testify that it is difficult to see high-voltage wires and that, because of the difference in the size of the boom and the wires, an optical illusion is created which makes the wire appear to be a greater distance from the boom than it actually is.

The trial court considered the evidence from depositions and affidavits. Two employees for Auto Crane testified concerning the illusion. Dunigan's co-worker testified that he had not seen the wires but that he had never looked for them or even looked up. He admitted that if he had looked for the wires, he probably would have seen them. There were no trees or other structures obscuring the lines. Dunigan's own testimony revealed that he had operated the crane in the area of high-tension wires and that he remembered a warning sign being on the boom indicating that it should not be brought within 10 feet of a power

line. He also testified that he knew it was dangerous to touch a power line with a boom.

The Public Service Commission investigated the accident and concluded that the ground clearance for the wires was adequate. They found no violation of the safety code or other regulations and made no recommendation.

Dunigan presented testimony from two experts who claimed the design and manufacture of the crane was defective or unsafe. Since the remote control device was not insulated, it created a dangerous condition for the user. They stated that protection could have been easily and inexpensively provided. They also testified that Auto Crane had a patent on a "proximity differential control" device designed to be installed on cranes to prevent contact and electrical shock.

Dunigan cites five Kentucky cases which recognize the proposition that contributory negligence is generally held to be a question for the jury. Each case is distinguishable for one reason or another. In *Kentucky-Tennessee Light & Power Co. v. Priest's Adm'r*, 277 Ky. 700, 127 S.W.2d 616 (1939), the danger was not obvious and the utility company erected the low-voltage wires across the lot where a shovel was operating. Priest had the right to assume that the wires were properly insulated when he attempted to move them. In *Green River Rural Electric Cooperative Corp. v. Blandford*, 306 Ky. 125, 206 S.W.2d 475 (1947), the high-tension wires were obscured in tree branches, and the plaintiff was not contributorily negligent when he pulled a pipe from a well and allowed the top of it to strike the wires over his head. Furthermore, Blandford was inside a well house. For Dunigan, there was no impediment to his observation of the electrical lines, if he had bothered to look for them.

■ Dunigan also cites *Kentucky & West Virginia Power Co. v. Goodman*, Ky., 257 S.W.2d 553 (1953); *Fisher Equipment Co., Inc. v. West*, Ky., 365 S.W.2d 319 (1962); and *Dunn v. Jackson Purchase*

*Rural Electric Coop Corp.*, Ky., 374 S.W.2d 190 (1963), for the proposition that the question of contributory negligence should be decided by the jury. In each case, the danger was not so eminent or obvious as it was in this case. Dunigan can not remember whether he saw the wires, but he must be held to have seen what would be obvious to one who looks. An ordinary prudent operator of such equipment would have checked the area. Dunigan knew the dangers, if the boom came in contact with high-tension electric wires. His failure to use his senses to ascertain the presence of the power lines and then to avoid them constitutes contributory negligence as a matter of law. On this point, we find *Goetz v. Green River Rural Electric Cooperative Corp.*, Ky., 398 S.W.2d 712 (1966), to be dispositive.

803 KAR 2:020, adopted pursuant to KRS 338.061(2), makes the occupational safety and health standards of the federal government applicable to Kentucky. One of the regulations requires a crane operator to maintain a 10-foot minimum clearance from electric power lines and requires notification of the owners of the lines before operation begins in close proximity to them. KRS 338.021(2) would make the violation of the regulation inapplicable in a workmen's compensation case, but the violation of the regulation would amount to contributory negligence in an action against a nonemployer such as Kentucky Utilities and Auto Crane.

■ Dunigan next argues that the defense of contributory negligence is not available to K.U. because of the alleged violation of a statutory safety standard. Although there was evidence to the contrary, we will assume the validity of the fact, as argued by Dunigan. In support of his argument, he cites *Lomayestewa v. Our Lady of Mercy Hospital*, Ky., 589 S.W.2d 885 (1979). The hospital had failed to comply with a safety regulation requiring the installation of detention screens on windows of mental hospitals. A patient jumped from a screenless window. The court held that the regulation was designed

to protect a class of individuals against their own inability to protect themselves and that, under such circumstances, the defense of contributory negligence by the patient was inapplicable. We must distinguish this case on the basis that Dunigan is not so protected by the regulation requiring that power lines be at a certain minimum height. He was able to protect himself, in that he had the ability to observe the wires and the mental ability and knowledge to avoid contact with them.

■ Likewise, we find no merit in Dunigan's argument that Kentucky Utilities and Auto Crane should be denied the defense of contributory negligence on the basis that they are strictly liable to him. He argues that the crane was sold to the employer in a defective condition, which was unreasonably dangerous to a user. He also argues that contributory negligence is no defense when one is engaged in an ultrahazardous activity. We are not aware of any defective condition in the crane, but Dunigan knew that the crane was not to be operated close to power lines, and if there was a defect or shortcoming in the warnings, such would be immaterial in this case. Dunigan admitted that he knew the danger. Furthermore, Kentucky has never adopted a strict liability standard for the transmission of high-voltage electricity. Most courts have uniformly rejected the doctrine that the transmission of electricity is an ultrahazardous activity. 82 A.L.R.3d 218. Furthermore, the rules for strict liability for abnormally dangerous activities rarely apply to activities carried on in pursuance of a public duty. *Restatement (Second) of Torts*, § 521 (1981). The transmission of electricity is a public necessity.

■ Dunigan presents one additional argument on which we will comment. He contends that Auto Crane acted in a wanton and reckless disregard for his safety by not installing or advising Kentucky Machinery of the proximity warning device which was available. We do not know whether Auto Crane attempted to sell the warning device to Kentucky Machinery or not. We know of no reason to obligate a seller to

vigorously promote every optional safety device which might be available. Likewise, a buyer is under no duty to buy everything available, unless required to by statute. Consider seat belts and air bags, for example. Nevertheless, failure to advise a buyer of machinery that an optional safety device is available can not be construed as reckless and wanton disregard for the safety of a future operator who admittedly realized a danger and could have avoided any problem by exercising reasonable care.

The summary judgment dismissing Dunigan's complaint and Kentucky Utilities' cross-claim and third-party complaint is affirmed.

All concur.