60 F.3d 828
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Norman HAHN, et al. Plaintiffs-Appellants,
v.
CHEVRON, U.S.A., INC. Defendant-Appellee.
 No. 94-5466.
 United States Court of Appeals, Sixth Circuit.
 July 5, 1995.
 
 Before: KEITH and BATCHELDER, Circuit Judges; and DUGGAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants, Norman Hahn and Marie Joyce Hahn, his wife, Henderson H. Hahn and Nettie Rae Hahn, his wife, and Hahn's Chevron, Inc. ("Hahns") appeal the summary judgment entered in favor of defendant-appellee, Chevron, U.S.A., Inc. ("Chevron"). The Hahns alleged that Chevron is liable for contamination resulting from underground petroleum storage tanks. In their complaint, the Hahns asserted that Chevron was liable either (1) under a theory of strict liability, (2) under a negligence theory, or (3) for the breach of an express or implied warranty. The district court granted summary judgment for Chevron finding that strict liability is not applicable to underground storage tanks, that no evidence of negligence by Chevron was presented by the Hahns, and that there is no evidence that Chevron made any warranties on the underground storage tanks. See Hahn v. Chevron, No. 92-523, (E.D. Ky. March 7, 1994). For the following reasons, we agree with the reasoning of the district court and AFFIRM the order granting Chevron's motion for summary judgment.
 
 I.
 
 2
 In 1967, the Hahns entered into a lease agreement with Chevron to operate and manage a gasoline and service station at 354 South College Street, Harrodsburg, Kentucky. In 1981, Chevron refurbished the underground storage tanks (USTs) located on the property leased by the Hahns. The refurbishments consisted of lining the USTs with fiberglass and relocating the remote fill lines connected to the USTs. After the refurbishments were made, Chevron poured six to eight inches of concrete over the USTs.
 
 
 3
 In January 1983, the Hahns bought from Chevron the real property on which the gasoline station was located, as well as the property's improvements and appurtenances. Almost three years later, in December 1985, the Hahns conveyed this property to plaintiff-appellant, Hahn's Chevron, Inc. Hahn's Chevron is a Kentucky corporation whose sole shareholders are Norman Hahn and his wife, Marie Hahn.
 
 
 4
 In 1990, the Hahns entered into negotiations with a third party to sell the gasoline station. Prior to the final sale, the buyer's lending institution required environmental testing of the site. The testing revealed soil contamination around the USTs. On January 28, 1991, Kentucky's Natural Resources and Environmental Protection Cabinet informed the Hahns that their property was contaminated. The Hahns closed the gasoline station in February, 1991, in order to conduct an excavation and cleanup of the site.
 
 
 5
 The Hahns hired Randall Curry, of Tank Professionals, Inc., to remove the contaminated soil. The Hahns claim that during excavation of the site the source of the contamination -- an open field line -- was discovered. According to the Hahns, Chevron left the field line uncapped when it refurbished the tanks in 1981. The Hahns blame the uncapped field line for the resulting contamination. The Hahns now operate an auto repair business on the property.
 
 II.
 
 6
 This Court reviews a district court's grant of summary judgment under a de novo standard. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir. 1991) (citations omitted). We also view the evidence in the light most favorable to the nonmoving party when determining whether a genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970) (citations omitted). Summary judgment is proper, under Fed. R. Civ. P. 56(c), if all the evidence before the district court "'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law."' Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988) (quoting Fed. R. Civ. P. 56(c)).
 
 
 7
 On appeal, the Hahns contest only the district court's grant of summary judgment on the issues of strict liability and negligence. The Hahns first contend that Chevron should be held strictly liable for any contamination from the USTs. According to the Hahns, strict liability is applicable to the storage of petroleum in USTs because such storage is an abnormally dangerous activity. In the alternative, the Hahns allege that Chevron should be held strictly liable under a products liability theory.
 
 
 8
 We do not find error in the district court's conclusion that Kentucky courts would not apply a strict liability standard to the storage of gasoline in USTs. Because the Kentucky courts have not yet decided the issue of whether strict liability is applicable to the storage of gasoline in USTs, the district court found guidance in a case interpreting Virginia law, Arlington Forest Assocs. v. Exxon Corp., 774 F. Supp. 387 (E.D. Va. 1991) (finding that the storage of gasoline in an underground tank is not an abnormally dangerous activity). As the Arlington Forest court stated, "[s]trict liability is reserved for selected uncommon and extraordinarily dangerous activities for which negligence is an inadequate deterrent or remedy." Id. at 390. In cases similar to the one at bar, Kentucky courts have declined to extend the strict liability doctrine to seemingly hazardous activity that can be conducted safely. See Kentucky Utilities Co. v. Auto Crane Co., 674 S.W.2d 15, 18 (Ky. Ct. App. 1983) (finding strict liability not applicable to transmission of high-voltage electricity); Collins v. Liquid Transporters, 262 S.W.2d 382, 383 (Ky. Ct. App. 1953) (finding strict liability not applicable to transportation of gasoline on public highways). In light of these decisions we find that the district court was correct in concluding that the Kentucky Supreme Court would not apply a strict liability standard to the storage of gasoline in USTs.
 
 
 9
 Likewise, the Hahns cannot succeed on their contention that a product liability standard should be applied. The USTs on the Hahns property were conveyed as fixtures with the realty, precluding a product liability theory. Furthermore, upon sale of the property, the Hahns released Chevron from all liability for any "loss, damage, injury or other casualty," caused by the use of the USTs.
 
 
 10
 The Hahns also allege that Chevron is liable due to Chevron's carelessness, recklessness, and negligence in installing and maintaining the USTs. As the district court found, however, the Hahns have failed to produce even indirect evidence that Chevron was negligent. The Hahns cannot prove that the uncapped field line was the cause of the contamination, nor can the Hahns prove that the excavation of the contamination did not itself cause the field line to become uncapped. Finally, under the Hahns' theory that the field line had been uncapped since 1981, when Chevron last refurbished the USTs, the Hahns could not explain why no loss of gasoline was detected during regular and meticulous testing of tank levels.
 
 
 11
 In any event, Chevron was responsible for operating, maintaining, and refurbishing the USTs only until 1983 when the Hahns purchased the property. After 1983, Chevron had no contact with the USTs, nor was Chevron ever informed of any problems with the USTs. It was the responsibility of the Hahns to maintain the property. In the face of the lapse of time between Chevron's 1981 refurbishment of the USTs and the discovery of contamination in 1990, and the lack of direct evidence of any negligence on Chevron's part, the speculative evidence of Randall Curry constitutes no more than a scintilla of evidence that Chevron was negligent.
 
 
 12
 The district court did not err, therefore, in granting Chevron's motion for summary judgment on the Hahns' negligence claim.
 
 III.
 
 13
 Having reviewed the district court's order de novo, the order granting defendant-appellees motion for summary judgment is AFFIRMED.
 
 
 
 *
 The Honorable Patrick J. Duggan, United States District Court for the Eastern District of Michigan, sitting by designation